UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Applicant,<br><br>v.<br><br>CITY OF LONG BRANCH,<br><br>    Respondent. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE WHY AN
ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED**

This case is before the Court on the application of the Equal Employment Opportunity Commission (the "EEOC" or "Commission") for an Order to Show Cause why an administrative subpoena should not be enforced. The EEOC is currently investigating a charge of race discrimination filed against the City of Long Branch ("Respondent"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). In the course of EEOC's investigation, EEOC has requested copies of documents relevant to the charge. Respondent refused to produce the documents. Respondent's refusal has impeded and delayed EEOC's investigation of the charge and forced EEOC to issue a subpoena. Respondent has refused to comply with EEOC's subpoena, forcing EEOC to file the present application. The EEOC therefore asks this Court to issue an Order to Show Cause why the subpoena should not be enforced.

### I. Factual Background

On or about February 7, 2013, Charging Party Lt. Lyndon Johnson filed a Charge of Discrimination against Respondent, alleging that Respondent discriminated against him on the

1

basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Declaration of John Waldinger, Director of the EEOC Newark Area Office, ¶ 6 (hereinafter "Waldinger Dec."). Charging Party, an African-American Lieutenant in the Long Branch Police Department, alleges that his employer, the City of Long Branch, has discriminated against him on the basis of race. Specifically, Lt. Johnson alleges that he was subjected to different and harsher disciplinary measures than similarly situated white colleagues who committed the same or similar alleged infractions. Waldinger Dec. ¶ 6.

EEOC served Respondent with a Notice of Charge and a copy of the Charge on August 19, 2013. Waldinger Dec. ¶7. In its September 23, 2013 Statement of Position, Respondent asserts that the disciplinary actions taken against Lt. Johnson are consistent with a race-neutral application of the Police Department's policies and standards and with disciplinary actions taken against Lt. Johnson's comparators. Waldinger Dec. ¶ 8.

In order to investigate whether Lt. Johnson was subjected to harsher discipline than his white co-workers for similar infractions, EEOC requested all disciplinary records for Lt. Johnson and six Caucasian comparators. EEOC's first request for the disciplinary files was made on December 30, 2013. Waldinger Dec. ¶ 9. On January 9, 2014, Respondent requested additional time, until February 15, 2014, to respond. Waldinger Dec. ¶ 10. In its letter of February 12, 2014, Respondent notified EEOC that it was gathering the materials but would produce them only if EEOC agreed to certain restrictions in the use and disclosure of the "confidential" materials. Respondent stated that EEOC must sign an agreement which provided, *inter alia*, that while EEOC could rely on the information to "form opinions and conclusions relating to the [charge] based on its evaluation" of the records but that EEOC "shall not" in discussing its opinions and conclusions "reveal the content of such Confidential materials except by prior

2

written agreement." Respondent also conditioned release of the files on EEOC's promise that no material designated "confidential" by Respondent "be provided, published, or otherwise revealed, in whole or in part, other than in the form of the EEOC's opinions and conclusions, as set forth above, to the claimant Lyndon B. Johnson and/or his counsel, representative, or the like." Waldinger Dec. ¶ 11.

In an effort to allay Respondent's concerns about the confidentiality of the requested information, EEOC outlined three statutory prohibitions against the unauthorized disclosure of confidential records and reiterated its request for the information. Waldinger Dec. ¶ 12. Specifically, EEOC advised Respondent of the prohibitions against disclosure of information obtained during the course of an EEOC investigation as set forth in Title VII (which makes disclosure by EEOC employees unlawful in most circumstances), the Privacy Act of 1974 (which, in most circumstances, prohibits disclosure of any EEOC files without the prior written consent of the individual to whom the record pertains), and the Commission's mandate, pursuant to the Freedom of Information Act, to deny requests of a non-party for investigatory files. Waldinger Dec. ¶ 12. Several weeks later, on May 21, 2014, Respondent reiterated its position that it would not produce the requested information "absent a Court Order." Waldinger Dec. ¶ 13.

On June 30, 2014, EEOC offered Respondent another chance to comply with its request for production of the files. Waldinger Dec. ¶ 14. Respondent refused, forcing EEOC to issue a subpoena. The subpoena was served on Respondent via email on July 23, 2014. Waldinger Dec. ¶ 15. EEOC also served the subpoena via certified return receipt requested mail, which was signed for by Respondent on July 25, 2014. Waldinger Dec. ¶ 15.

A party who finds any portion of an EEOC administrative subpoena objectionable may, within five days of service of the subpoena, petition the Commission for relief. 29 C.F.R. § 1601.16(b)(1)-(2). This process permits the agency to conduct a review and determination of the subpoena and Respondent's objections. *Id.* In this case, Respondent failed to file a timely Petition to Revoke or Modify the EEOC Subpoena in accordance with the controlling regulations.[1]

Nevertheless, over the course of the next several months, EEOC attempted to reach a mutually acceptable agreement with Respondent to avoid using agency and judicial resources to litigate this issue. Respondent, however, remained steadfast in its refusal to produce the records unless EEOC agreed to its demands for restrictions on EEOC's use and disclosure of the information contained in files. Waldinger Dec. ¶ 17.

## II. Argument

In accordance with its statutory mandate to investigate charges of employment discrimination, EEOC seeks to determine whether Lt. Johnson has been discriminated against and subjected to disparate discipline on the basis of race in violation of Title VII. To that end, EEOC made the unremarkable request that Respondent produce the disciplinary files of Lt. Johnson and six comparators. Respondent's continued refusal to produce those files compels EEOC to seek relief from this Court.

### A.  Respondent Failed to Exhaust its Administrative Remedies By Filing A Timely Petition to Revoke or Modify the Subpoena and Has Therefore Waived Its Right to Object.

---

[1] In addition to being filed out of time, Respondent incorrectly filed a "Notice of Motion to Quash [sic] Subpoena" on grounds that counsel for the PBA objected to release of the records, and that production of the records is restricted in accordance with the New Jersey Attorney General's "Internal Affairs Policy and Procedures". Waldinger Dec. ¶ 16.

4

Respondent failed to properly exhaust its administrative remedies by filing a timely Petition to Revoke or Modify EEOC's subpoena and has, therefore, waived its right to be heard to object. A party who has been served with an EEOC subpoena who wishes to raise objections in support of its refusal to comply must petition the EEOC to revoke or modify the subpoena within five days of service. 29 C.F.R. §1601.16(b)(1). Under the consistent case law detailed below, unless there is a constitutional basis for objecting, failure to properly exhaust the administrative remedies deprives the Court of jurisdiction to hear the objections to an EEOC subpoena enforcement and constitutes a waiver of objections.

Respondent did not exhaust its administrative remedies by filing a timely petition to revoke or modify the subpoena within five business days and, has, therefore waived its right to raise objections to subpoena enforcement. EEOC's subpoena was received by Respondent via email on July 23, 2014 and via certified mail on July 25, 2014. Waldinger Dec. ¶ 15. In order to be compliant with the controlling regulations and case law, Respondent's Petition to Revoke or Modify was due, at the latest, August 1, 2014, five business days after it received the subpoena via certified mail. Instead, its incorrectly captioned objections were not received by EEOC until August 7, 2014. Waldinger Dec. ¶ 15. Consequently, Respondent's objections to enforcement of the subpoena are untimely and should not be heard. *See EEOC v. Aerotek, Inc.*, 498 Fed. App'x. 645, 647-49 (7th Cir. 2013) (holding that Aerotek was foreclosed from challenging the EEOC's subpoena because the petition was one day late); *EEOC v. Sunoco., Inc.*, 2009 U.S. Dist. LEXIS 6070 *13, Civil Action No., 08-MC-145, (E.D. Pa. 2009) (employer's objections to EEOC subpoena "are waived for failure to exhaust its administrative remedies" where petition to revoke was not timely filed); *EEOC v. City of Milwaukee,* 54 F. Supp. 2d 885, 891 (E.D. Wis. 1999) (City was precluded from raising any defenses to enforcement because petitions to modify

were untimely); *cf., EEOC v. Roadway Express, Inc.*, 569 F.Supp. 1526, 1528-29 (N.D. Ind. 1983) (finding that Roadway had waived its right to object to EEOC subpoena by failing to file a petition to revoke, the Court noted that "[i]t has long been established that a party will normally be denied judicial relief for injury until administrative remedies have been exhausted.").

  **B.** **Even if the Court Were To Consider the Merits of Respondent's Argument, EEOC's Subpoena Should Be Enforced.**

  The standard for subpoena enforcement is not rigorous and is easily satisfied by EEOC here. EEOC subpoena enforcement proceedings are summary in nature and involve only limited judicial review. *EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366, 368 (7th Cir. 2011); *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002); *EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80, 82 (4th Cir. 1995); *EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir.1991); *EEOC v. Md. Cup Corp.*, 785 F.2d 471, 475 (4th Cir. 1986); *EEOC v. Guess?, Inc.*, 176 F. Supp. 2d 416, 420 (E.D. Pa. 2001); *see also EEOC v. Shell Oil Co.*, 466 U.S. 54, 81 (1984) (rejecting argument that notice of the charge was insufficient because allowing respondents to make such an argument would delay EEOC's investigations); *EEOC v. Dillon Cos.*, 310 F.3d 1271, 1277 (10th Cir. 2002) (not allowing "an employer to turn a summary subpoena-enforcement proceeding into a mini-trial by allowing it to interpose defenses that are more properly addressed at trial").

  To successfully petition a court to enforce an administrative subpoena, the Commission need only show that "1) its investigation has a legitimate purpose, 2) the inquiry is relevant to that purpose, 3) the agency does not already possess the information requested, 4) the agency has complied with relevant administrative requirements, and 5) the demand is not "'unreasonably broad or burdensome.'" *EEOC v. Kronos, Inc.*, 620 F.3d 287, 296 n.4 (3d Cir. 2010) (quoting

6

*Univ. of Med. & Dentistry of N.J. v. Corrigan,* 347 F.3d 57, 64 (3d Cir. 2003)). EEOC easily satisfies this five-part test and, to date, Respondent has not asserted otherwise.

1. EEOC's Investigation Has A Legitimate Purpose

Congress has authorized, and indeed mandated, that EEOC investigate charges of discrimination alleging that Title VII has been violated. 42 U.S.C. § 2000e-5(b). Congress has conferred on the Commission broad powers of access to records of those entities against whom charges have been filed, 42 U.S.C. § 2000e-8(a), including the authority to subpoena evidence in an investigation, 29 U.S.C. § 161 (incorporated by 42 U.S.C. § 2000e-9). Here, EEOC is investigating whether Respondent applied its disciplinary policies and procedures equally, regardless of the race of the employee, an inquiry which falls squarely within the agency's statutory mandate. Thus, the first prong set forth in *EEOC v. Kronos, Inc.* is satisfied.

2. EEOC's Request for Seven Employee Discipline Files Is Relevant

EEOC seeks to determine whether Respondent applied it disciplinary policies in a race-neutral manner by examining the disciplinary files of the African-American Charging Party and six similarly situated white comparators. Those files, the only information sought by the subpoena, are directly relevant to the issue of whether Respondent engages in disparate discipline based on race. A comparison of the disciplinary files is not only "relevant", it is the only way EEOC can determine whether the allegations of disparate discipline have merit. The question of the relevance of this information is not and cannot be seriously disputed.

The concept of relevance during an EEOC investigation is broader than is that concept during litigation; and relevance is not restricted to the confines of the individual charge. Relevance is routinely found where, as here, EEOC seeks information about employees other than the Charging Party. *EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110, 116 (3d Cir.

7

1985)(comparative evidence may reveal discrimination); *EEOC v. Howell*, Civil Nos. 91-2731, 91-2732, 1991 U.S. Dist. LEXIS 11650 (D.N.J. 1991) (personnel files requested by EEOC would reveal comparative information "vital to EEOC's investigation."); *EEOC v. Schwan's Home Serv.*, 644 F.3d 742, 747-48 (8th Cir. 2011) (EEOC may subpoena information about persons other than the charging party); *EEOC v. Las Vegas Metro. Police Dept.*, 143 F.R.D. 233, 234 (D. Nev. 1991) (personnel files and records of various employees is relevant to EEOC's investigation of race discrimination).

Pursuant to its statutory authority, EEOC is entitled to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). "[C]ourts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *Shell Oil Co.*, 466 U.S. at 68-69.

Respondent has not objected to production of the subpoenaed files on relevance grounds. Clearly, such files are critical to EEOC's ability to determine if Respondent disciplines its employees in a race-neutral manner. In cases of disparate discipline, evidence of the treatment accorded the alleged victims comparators is essential. Therefore, the disciplinary files of Charging Party and his comparators are relevant under the second *Kronos* prong.

### 3. EEOC Does Not Already Possess the Employee Files

This prong of the Kronos test needs little elaboration. At issue here are the personnel files of Respondent's employees. EEOC does not have the files, which are in Respondent's possession.

### 4. EEOC Has Complied with Relevant Administrative Requirements

There is no dispute here that a valid charge has been filed and the subpoena contains all the information required by the EEOC's regulations. *See* 29 C.F.R. § 1601.16(a) (elements of subpoena)[2]. *See also Shell Oil Co.*, 466 U.S. at 67-74 (addressing requirements of valid charge); 29 C.F.R. § 1601.12 (same). The Respondent does not, and could not, allege that these basic requirements have not been met.

     5.  <u>Production of the Subpoenaed Files is Not Unreasonably Broad or Burdensome</u>

Respondent does not and could not claim that compliance with the subpoena would impose an undue burden on its operations. EEOC has requested that Respondent produce seven employee discipline files, a limited, reasonable, task that will require little time, effort, or expense. It follows that the Court should enforce the subpoena where Respondent cannot show that the cost of compliance with the subpoena is "unduly burdensome in the light of the company's normal operating costs." *Md. Cup Corp.*, 785 F.2d at 479. Thus, the subpoena should be enforced.

    II.    **The Subpoenaed Documents Cannot Be Withheld on Grounds That They Contain Confidential or Private Information**

While none has been articulated by Respondent, any legitimate concern regarding the disclosure of confidential information contained in subpoenaed files is extinguished by statute and is an insufficient basis for refusal to comply with the subpoena. Both 42 U.S.C. § 2000e-8(e) and EEOC's enforcing regulations found at 29 C.F.R. § 1601.22 specifically prohibit publication of information obtained by EEOC during the course of an investigation.

---

[2] 29 C.F.R. § 1601.16(a) states, in relevant part:
> The subpoena shall state the name and address of its issuer, identify the person or evidence subpoenaed, the person to whom and the place, date, and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested. A subpoena shall be returnable to a duly authorized investigator or other representative of the Commission.

Simply put, violation of employee confidentiality is an insufficient basis upon which to deny enforcement of EEOC's administrative subpoena in this case. *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981) ("[C]onfidentiality is no excuse for noncompliance [with an EEOC subpoena] since Title VII [of the Civil Rights Act of 1964] imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination"). Title VII imposes strict restraints on the Commission and its employees to maintain the confidentiality of information learned during investigations and informal endeavors to conciliate. Indeed, Title VII incorporates the very provisions on which *Bay Shipbuilding* relied:

> It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.

42 U.S.C. §§ 2000e-5(b), 2000e-8(e). Hence, the Respondent's and employees' confidences are adequately protected.

Objections based on confidentiality are thereby rendered spurious and do not shield employers from compliance with EEOC requests for information. Relying on these statutory provisions, the Supreme Court rejected a university's argument that a court could, in its discretion, require the EEOC to show more than relevance as a condition to obtain confidential, tenure-review materials. *EEOC v. Univ. of Pa.*, 493 U.S. 182, 192 (1990). The Court noted that though the statute establishes no privilege to protect employees' privacy, "Congress did address situations in which an employer may have an interest in the confidentiality of its records" by making it unlawful under 42 U.S.C. § 2000e-8(e) (incorporated by 42 U.S.C. § 12117(a)) for the

10

Commission to disclose information obtained under its investigative authority. 493 U.S. at 192. Thus, the confidences are protected. *Id.*

Numerous courts have required production of personnel files of non-charging parties over Respondents' objections based on confidentiality. *EEOC v. Uni. of N.M.*, 504 F.2d 1296 (10th Cir. 1974) (enforcing EEOC subpoena for personnel records); *EEOC v. Twp. of Howell*, 1991 U.S. Dist. LEXIS 11650 (D.N.J. 1991) (court ordered production of personnel files of all candidates for position of Chief of Police to EEOC without need to obtain release from individuals finding that confidentiality was preserved by statute); *cf. Univ. of Pa. v. EEOC*, 493 U.S. at 192-93 (EEOC's interest in and statutory right to review peer review materials outweighs need for confidentiality of such material); *EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110 (3d Cir. 1985), *cert. denied*, 476 U.S. 1163 (1986) (grant of authority to EEOC warrants EEOC entitlement to any material EEOC deems relevant to its investigation.

Further, Respondent's refusal to comply with the subpoena only if EEOC agreed that neither the files nor their contents would be disclosed to Charging Party flies in the face of the mandate of Title VII and well-settled case law. As noted by the Supreme Court in *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 598 (1981), the charging party is not a member of the "public" to whom disclosure is prohibited.

In sum, the statutory and regulatory safeguards in place are sufficient to ensure that confidential and private information is reviewed only by persons authorized by statute to view it. Although EEOC has reviewed and explained these safeguards, Respondent continues in its refusal to comply with the EEOC's subpoena.

  **IV.**  **Respondent Cannot Properly Refuse to Comply with the EEOC's Subpoena on Grounds that a Court Order Is Required under Guidelines Issued by the State Attorney General**

The only substantive objection raised by Respondent to date is that disclosure of the subpoenaed records are governed by the State Attorney General's Policies and Procedures and cannot be produced absent a "court order". Waldinger Dec. ¶ 13. The assertion that the state Attorney General's internal policies and procedures pre-empt EEOC's federally mandated statutory powers is simply incorrect.

Courts have repeatedly held that, given EEOC's federal mandate, state law restrictions must give way to EEOC requests for information. *EEOC v. Cnty of San Benito*, 818 F.Supp. 289 (N.D. Ca. 1993) (state law prohibition against release of peace officer personnel records preempted by Title VII); *cf. Garrett v. San Francisco*, 818 F.2d 1515 (9th Cir. 1987) (personnel records are discoverable in Title VII cases despite claims of privilege); *Carr v. Monroe Mfg. Co.*, 431 F.2d 384 (5th Cir. 1970) ("the special federal interest in seeking the truth in a federal question case may require disclosure despite the existence of a state rule holding the same communications privileged."). It is well settled that state law is preempted where, as here, it conflicts with or frustrates the scheme of federal law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993).

Further, Respondent's effort to use the Attorney General guidelines as a shield against compliance with an EEOC subpoena is a waste of EEOC and judicial resources. In affirming the preemptive force of an EEOC subpoena, the court in *EEOC v. City of Orange*, 905 F. Supp. 381 (D. Tex. 1995), aptly noted:

> Congress has designed an elaborate statutory scheme to combat discriminatory employment practices. As the federal agency with primary responsibility in this area, EEOC is empowered by statute to investigate charges of discrimination in employment. 42 U.S.C. sec. 2000e-5. Congress charged EEOC with conducting its investigation in a prompt and timely fashion. Id. Sec. 2000e-8(a). EEOC's investigative efforts into the employment practices of entities subject to the provisions of the Texas Government Code would be delayed significantly if a court order were

> required to enforce every administrative subpoena served upon these entities. Accordingly, the Texas statute is preempted to the extent that it thwarts the EEOC's efforts to carry out the manifest intent of the Congress.

*Id.* at 2-3; *EEOC v. County of Hennepin*, 623 F. Supp. 29, 32 (D. Minn. 1985) (Title VII preempts state statute which requires that certain records can be released only upon a court order).

In fact, in civil litigation courts often order the release of internal affairs files even in the absence of federal preemption, and even in the absence explicit safeguards against public disclosure that are present here. *See, e.g.*, *Groark v. Timek*, 989 F. Supp. 2d 378 (D.N.J. 2013); *Carchietta v. Russo*, C.A. No. 11-cv-7587, 2014 U.S. Dist. LEXIS 62344 (D.N.J. May 6, 2014); *Caver v. City of Trenton*, 192 F.R.D. 154 (D.N.J. 2000); *Beck v. City of Pittsburgh*, 89 F.3d 966; 974 (3d Cir. 1996); *Troso v. City of Atlantic City*, C.A. No. 10-1566, 2013 U.S. Dist. LEXIS 163420 (D.N.J. Nov. 15, 2013). Here, given that federal law preempts the state guidelines, there are statutory and regulatory protections in place to ensure that confidential information is safeguarded, and the requested files are essential to EEOC's investigation, the Court should grant EEOC's Order and require production of the seven files in dispute.

### III. Conclusion

The Court should enforce the EEOC's subpoena. The subpoena seeks information relevant to a valid charge of discrimination that is within the EEOC's enforcement authority, is in the sole possession of Respondent, and is necessary for EEOC to continue its investigation. Respondent cannot establish that production of seven files would be unduly burdensome. The

13

Commission therefore urges the Court to issue the accompanying proposed Order to Show Cause, and enforce the subpoena.

                                      Respectfully Submitted,

Date: February 10, 2015                /s/ Rosemary DiSavino
                                           Rosemary DiSavino
                                           Senior Trial Attorney
                                           Equal Employment Opportunity Commission
                                           One Newark Center, 21st Floor
                                           Newark, N.J. 07102
                                           rosemary.disavino@eeoc.gov
                                           Telephone (973) 645-6430
                                           Facsimile (973) 645-4524