UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EQUAL EMPLOYMENT OPPORTUNITY   :
COMMISSION,         :
             :
     Applicant,    :
             :
  v.         :
             :
CITY OF LONG BRANCH     :
             :
     Respondent.   :
             :

## DECLARATION OF JOHN WALDINGER, AREA DIRECTOR, NEWARK AREA OFFICE, EEOC

I, John Waldinger, declare under the penalty of perjury that the following is true and correct:

1. I am the Director of the Newark Area Office of the Equal Employment Opportunity Commission ("EEOC"), and, in that role, I am responsible for the operations of the office, including the investigation of charges of employment discrimination.

2. The Newark Area Office is responsible for investigating charges that employers have engaged in employment practices made unlawful by Title VII of the Civil rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII" ).

3. Among the charges pending before EEOC in the Newark Area Office is Charge No. 17E-2013-00267, which was filed by Charging Party Lt. Lyndon B. Johnson against the City of Long Branch, Police Department ("Respondent").

4. I supervise the work of the investigators, including Federal Investigators Dana Marucci and Philip Dudt, who were assigned to investigate this charge.

5. I state the following based on my personal examination of the file relating to this Charge.

6. On February 7, 2013, Charging Party filed a Charge of Discrimination against Respondent, alleging, *inter alia*, violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Charging Party alleged that he was subjected to harsher discipline than similarly situated white employees. A true and correct copy of the Charge of Discrimination is attached herein as Exhibit A.[1]

---

[1] EEOC has redacted the names of individuals from the correspondence attached to Exhibits A, C, H, and I to ensure confidentiality.

7.     Charging Party's file was transferred from the Philadelphia Office to the Newark Area Office of the EEOC and Respondent was served with a Notice of the Charge of Discrimination and copies of the Charge of Discrimination filed by Lt. Johnson in the summer of 2013.  A true and correct copy of those Notices are attached herein as Exhibit B.

8.     In its September 23, 2013 Statement of Position Respondent asserts that the disciplinary actions taken against Lt. Johnson are consistent with a race-neutral application of the Police Department's policies and standards and with disciplinary actions taken against Lt. Johnson's comparators.

9.     Investigator Marucci served Respondent with a Request for Information ("RFI") on December 30, 2013.  The request sought "all disciplinary records" for the Charging Party and six comparators.  A true and correct copy of EEOC's request for information is attached herein as Exhibit C.

10.    On January 9, 2014, Respondent requested additional time, until February 15, 2014, to respond to EEOC's request.

11.    On February 12, 2014, Respondent notified EEOC that it was gathering documents responsive to EEOC's request but would produce them only if EEOC agreed to certain restrictions in the use and disclosure of the information contained in the files.  Among other things, Respondent refused to produce the documents unless EEOC agreed that EEOC's "opinions and conclusions shall not reveal the content" of the material "except by prior written agreement" and EEOC agreed that no part of the material shall be revealed "other than in the form of the EEOC's opinions and conclusions" to the Charging Party or the Charging Party's representative.  A true and correct copy of Respondent's letter is attached herein as Exhibit D.

12.    In response to Respondent's concerns about ensuring the confidentiality of the contents of the files, EEOC Investigator Dudt notified Respondent of three separate statutory prohibitions against disclosure of EEOC's investigative files and confidential information within such files.  Investigator Dudt reiterated EEOC's request that Respondent produce the files of the seven individuals.  A true and correct copy of EEOC's letter is attached herein as Exhibit E.

13.    Several weeks later, on May 21, 2014, Respondent advised EEOC that Respondent would not produce the files "absent a Court Order."  A true and correct copy of the email exchange containing Respondent's response to the EEOC is attached herein as Exhibit F.

14.    On June 30, 2014, Investigator Dudt offered Respondent another chance to comply with EEOC's request.  A true and correct copy of Investigator Dudt's letter is attached herein as Exhibit G.

15.    Respondent's continued refusal to comply with EEOC's request for information then necessitated that EEOC issue a subpoena.  Investigator Dudt served Respondent with a copy of the subpoena via email on July 23, 2014 and mailed the subpoena that same day via certified return receipt requested.  The return receipt indicates that the subpoena was received via U.S. Postal Service two days later, on July 25, 2014.  A true and correct copy of the EEOC subpoena, the email confirmation, and the return receipt from the U.S. Postal Services are attached herein as Exhibit H.

16.    Rather than file a Petition to Revoke or Modify the Subpoena within five days, Respondent filed an undated "Motion to Quash" which was date-stamped as received by EEOC on August 7, 2014.  A true and correct copy of Respondent's papers, including the EEOC date-stamp, are attached herein as Exhibit I.

17.    In the interests of saving agency and judicial resources, EEOC personnel thereafter attempted to arrive at a mutually acceptable agreement with Respondent.  Respondent, however, continued to condition production of the files on EEOC's agreement to abide by restrictions in EEOC's use and disclosure of the documents, leaving EEOC with no alternative but to file the present Application.

18.    As of the date of this Declaration, Respondent has failed to produce the documents requested and then subpoenaed by the EEOC.


Date:  February 9, 2015

_____
John Waldinger
Director, Newark Area Office
U.S. Equal Employment Opportunity Commission


Subscribed and sworn to before me this 9 day of February, 2015


Notary Public

Jadhira V. Rivera
Attorney-At-Law
Of the State of New Jersey
Authorized to Administer this Oath
Pursuant to N.J.S.A. 41:2-1

3

# Exhibit A

STATE OF NEW JERSEY
DEPARTMENT OF LAW & PUBLIC SAFETY
DIVISION ON CIVIL RIGHTS
DOCKET NUMBER:
EEOC CHARGE NO.: 17E-2013-00267

Lyndon B. Johnson               )
                                )
                                )
COMPLAINANT                     )        VERIFIED COMPLAINT
                                )
-vs-                            )        Received and Recorded
                                )        Date: 02/07/2013
Long Branch Police Department   )        Department of Law and Public Safety
                                )        Division on Civil Rights
                                )        By: L. R. Johnson
RESPONDENT                      )
                                )

1. The Complainant resides at:



2. To the best of Complainant's knowledge and belief, the Respondent is known as:

Long Branch Police Department

and is located at:

344 Broadway
Long Branch, NJ 07740
Monmouth County

-2-

3.  Charge of Discrimination.

The above named Respondent is hereby charged with unlawful employment discrimination in violation of the named statutes with respect to the following charges:

3.1 Suspended based on **Race** in violation of the Civil Rights Act of 1964.

4.  PERSONAL HARM:

Complainant was suspended.

The charge is based on the following:

4.1 Complainant belongs to a protected class in that he is **Black**.

4.2 Respondent hired Complainant as a **Patrolman** in **August 1993** and in **November 2005** he assumed the duties of a **Lieutenant**.

4.3 Complainant alleges that since **May 2012** he has been subjected to the following:

-On **May 31, 2012,** he was informed that he was being suspended until **December 1, 2012**.
-On **December 1, 2012,** he was informed that his suspension was being extended until **June 1, 2013**.
-On **January 25, 2013,** he was informed that his suspension was being extended until **November 30, 2013**.

5.  RESPONDENT'S REASON FOR ADVERSE ACTION:

5.1. Respondent's Lieutenant, ███████████, told Complainant that his May 31, 2012 to December 1, 2012 suspension was for making threatening and inappropriate comments to Respondent's dispatchers under his supervision. Lieutenant ████ told Complainant that his December 1, 2012 to June 1, 2013 suspension was for knowingly and purposely approving a police report that he knew to be false. Lieutenant ████ told Complainant that his suspension was being extended until November 30, 2013 because he improperly accessed the Criminal Justice Information System.

-3-

6.      DISCRIMINATION STATEMENT:

6.1  Complainant alleges that he is being discriminated against because of his
race.  Specifically Complainant denies any wrong doing and alleges that similarly
situated non Black employees, namely ███████████████████████
███████████████ have done the same things and worse, yet were not
suspended.

-4-

7.    Said acts of discrimination occurred in the County of **Monmouth** in the State of New Jersey.

8.    The Complainant requests whatever relief is provided by law including, but not limited to, compensatory damages for economic loss, humiliation, mental pain and suffering.

9.    The Complainant has not instituted action in any court, either criminal or civil, regarding this matter.

x _____
                          COMPLAINANT

STATE OF NEW JERSEY    )
                       ) SS:
COUNTY OF MERCER       )

Lyndon B. Johnson, of full age, being duly sworn according to law deposes and says; that he is the Complainant herein; that he has read the foregoing Complaint and knows the content thereof; that to the best of his knowledge, information and belief, the facts alleged therein are true.

x _____
                          COMPLAINANT




TO: NEW JERSEY DIVISION ON CIVIL RIGHTS (NJDCR)
      AND
      EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC)

RE: _Lyndon B. Johnson_ vs _Long Branch Police Dept._

EEOC and NJDCR have determined by a worksharing agreement that all charges initially received by EEOC which name Respondents with addresses in the STATE OF NEW JERSEY will be initially processed by EEOC. Also, charges initially received by NJDCR that name Respondents with addresses in the STATE OF NEW JERSEY will be processed by NJDCR. However, the determination as to the subsequent processing by either agency will be decided by the charging party. The choices for this processing are as follows: (Indicated by initialing the selected option).

_____ I elect to waive all rights to an EEOC investigation. I understand that this means that the only Investigation of my charge will be done by the NJDCR and that I have waived all of my federal rights as provided me by EEOC.

_Initials_ _____ I elect to waive my rights to a NJDCR investigation. I understand that this means that the only Investigation of my charge will be done by EEOC and I have therefore waived all my state rights provided for me by the NJ Law Against Discrimination.

_____ I elect to also file my charge with EEOC. I understand that this means that my federal rights are preserved and that EEOC may file my charge. However, EEOC will not begin any active processing of my charge until the closure of my charge by the NJDCR, unless warranted.

I herein certify that the above choices have been fully explained to me by the NJDCR intake officer.

_____       Feb. 7, 2013
(Signature)                             (Date)

# Exhibit B

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Mr. Howard Woolley<br>Business Administrator<br>LONG BRANCH POLICE DEPARTMENT<br>344 Broadway<br>Long Branch, NJ 07740 | **Lyndon Johnson** |

| THIS PERSON (check one or both) |
|---|
| [X] Claims To Be Aggrieved |
| [ ] Is Filing on Behalf of Other(s) |

EEOC CHARGE NO.
**17E-2013-00267**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)　　[ ] The Equal Pay Act (EPA)　　[ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)　　[ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by to

If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| Eris Yarborough<br>Intake Supervisor | **Newark Area Office**<br>**1 Newark Center**<br>**21st Floor**<br>**Newark, NJ 07102**<br>**Fax: (973) 645-4524** |
|---|---|
| *EEOC Representative* | |
| *Telephone*　**(973) 645-6016** | |

Enclosure(s):　[X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] Race　[ ] Color　[ ] Sex　[ ] Religion　[ ] National Origin　[ ] Age　[ ] Disability　[ ] Retaliation　[ ] Genetic Information　[ ] Other

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **July 18, 2013** | **Spencer H. Lewis, Jr.**<br>**District Director, Philadelphia District Office** | |

EEOC Form 212-A (3/98)

# U.S. Equal Employment Opportunity Commission

TO:    **Newark Area Office**
**1 Newark Center**
**21st Floor**
**Newark, NJ 07102**

Date    **August 14, 2013**
EEOC Charge No.
    **17E-2013-00267**

FEPA Charge No.
    **EN25RM63709**

CHARGE TRANSMITTAL

SUBJECT:

_____**Lyndon Johnson**_____    _v._    _____**LONG BRANCH POLICE DEPARTMENT**_____
Charging Party                                  Respondent

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC    ☐    _____  on    **Jul 24, 2013**
                                          Name of FEPA                    Date of Receipt

[X] Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

    ☐ EEOC requests a waiver             ☐ FEPA waives

    ☐ No waiver requested             ☐ FEPA will investigate the charge initially

    _Please complete the bottom portion of this form to acknowledge the receipt of the charge,_
    _and, where appropriate, to indicate whether the Agency will initially investigate the charge._

Typed Name and Title of EEOC or FEPA Official
**Amparo Soto, Acting Director**             Signature/Initials   _Amparo Soto_

_____**Lyndon Johnson**_____    _v._    _____**LONG BRANCH POLICE DEPARTMENT**_____
Charging Party                                    Respondent

TO WHOM IT MAY CONCERN:

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to dismiss/close/not docket the charge for the following reasons:

Typed Name and Title of EEOC or FEPA Official
**Corrado Gigante, Director**             Signature/Initials

TO:    **Newark Area Office**
**1 Newark Center**
**21st Floor**
**Newark, NJ 07102**

Date    **August 14, 2013**
EEOC Charge No.
    **17E-2013-00267**
FEPA Charge No.
    **EN25RM63709**

**EEOC PHILADELPHIA DISTRICT OFFICE**
**NOTICE OF SETTLEMENT OPPORTUNITY & NOTICE OF TRANSFER OF CHARGE**

Charge Number: 17E-2013-00267
Case Name:   Lyndon Johnson v. Long Branch Police Department

The above-referenced charge of employment discrimination has been
received by the Philadelphia District Office of the Equal Employment
Opportunity Commission (EEOC) and assigned the above charge number.
In most instances, the EEOC initiates its investigation of charges by
sending the Respondent a Request for Information (RFI).  The initial
RFI for this charge, if necessary, will be sent to Respondent at a
later date under separate cover.

In addition, the Commission generally attempts to negotiate a
settlement for each charge.  For such settlements, the EEOC
representative attempts to facilitate settlement discussions between
the two parties in the hopes of obtaining an agreement mutually
satisfactory to the parties and to EEOC.  If such a settlement is
negotiated, the Commission will prepare a Settlement Agreement to be
signed by all parties, including EEOC.

Negotiated Settlement Agreements typically include the following:
a)   a description of the relief to be provided to the Charging
Party as a result of the Agreement;
b)   means of monitoring to insure that the terms of relief are met;
c)   a statement which expressly indicates that the Respondent is
not acknowledging any violation of the statute(s) under which the
charge was filed;
d)   a clause prohibiting retaliation; and
e)   a waiver by the Charging Party of his/her private suit rights
under the applicable statutes administered by EEOC.

In addition, a Settlement Agreement concludes EEOC's investigation of
the subject charge.  Such EEOC closure would eliminate the need
thereafter for Respondent to prepare statements, to respond to RFIs,
to make witnesses available or to otherwise respond to the
Commission's investigation.

Although Respondent will be contacted by an EEOC representative to
discuss the possibility of settlement, the Commission's increasing
inventory has resulted in some delay before such settlement efforts
can be initiated.  However, if Respondent at this time is interested
in pursuing settlement, the Respondent representative is invited to
contact EEOC directly as a means of insuring expedited settlement
discussions.  If that is Respondent's intent, please contact the EEOC
representative as identified on the following page within 15 days of
the date of mailing of this Notice.



## NOTICE OF TRANSFER

Because the Respondent is located within the geographical jurisdiction of EEOC's Newark Area Office, the charge is being transferred to that office for all further EEOC processing.   You will be contacted by that office as appropriate.  However, please address all further communications directly to the Newark Area Office, as follows:

    EEOC
      Newark Area Office
      One Newark Center, 21st Floor
      Newark, NJ 07102
      973-645-4684

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Mr. Howard Woolley<br>Business Administrator<br>LONG BRANCH POLICE DEPARTMENT<br>344 Broadway<br>Long Branch, NJ 07740 | **Lyndon Johnson** |

| THIS PERSON (check one or both) |
|---|
| [X] Claims To Be Aggrieved |
| [ ] Is Filing on Behalf of Other(s) |

EEOC CHARGE NO.
**17E-2013-00267**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)   [ ] The Equal Pay Act (EPA)   [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)   [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **16-SEP-13** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **26-AUG-13** to **Ralph Charles, ADR Coordinator, at (973) 645-6655**
   If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| Amparo Soto,<br>Acting Director | **Newark Area Office**<br>**1 Newark Center**<br>**21st Floor**<br>**Newark, NJ 07102**<br>**Fax: (973) 645-4524** |
|---|---|
| *EEOC Representative* | |
| *Telephone*   **(973) 645-5978** | |

Enclosure(s):  [X]  Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] Race   [ ] Color   [ ] Sex   [ ] Religion   [ ] National Origin   [ ] Age   [ ] Disability   [ ] Retaliation   [ ] Genetic Information   [X] Other

**See enclosed copy of charge of discrimination.**

| Date<br><br>**August 14, 2013** | Name / Title of Authorized Official<br><br>**Amparo Soto,**<br>**Acting Director** | Signature<br><br>*Amparo Soto* |
|---|---|---|

*Enclosure with EEOC*
*Form 131 (11/09)*

 

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 207(f) of GINA, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

EEOC FORM 131 (11/09)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Mr. Howard Woolley<br>Business Administrator<br>LONG BRANCH POLICE DEPARTMENT<br>344 Broadway<br>Long Branch, NJ 07740 | **Lyndon Johnson** |

THIS PERSON (check one or both)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.

**17E-2013-00267**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)    [ ] The Equal Pay Act (EPA)    [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)    [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **09-SEP-13** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by   to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by to   If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| John Waldinger,<br>Enforcement Supervisor | Newark Area Office<br>1 Newark Center<br>21st Floor<br>Newark, NJ 07102<br>Fax: (973) 645-4524 |
|---|---|
| *EEOC Representative* | |
| *Telephone*   **(973) 645-6021** | |

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] Race   [ ] Color   [ ] Sex   [ ] Religion   [ ] National Origin   [ ] Age   [ ] Disability   [ ] Retaliation   [ ] Genetic Information   [ ] Other

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **August 19, 2013** | **Amparo Soto,<br>Acting Director** | *Amparo Soto* |

*Enclosure with EEOC*
*Form 131 (11/09)*

 

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 207(f) of GINA, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

# Exhibit C



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Newark Area Office**

1 Newark Center, 21ˢᵗ Floor
Newark, NJ  07102-5233
(973) 645-4689
TTY (973) 645-3004
FAX (973) 645-4524

Our Ref:  **Charge Number 17E-2013-00267**
**Lyndon B. Johnson v. Long Branch Police Department**

Emery J. Mishky, Esq.
Margolis Edelstein
Connell Corporate Office
400 Connell Drive, Suite 5400
Berkeley Heights, NJ 07922

Dear Mr. Mishky,

In order to conduct a complete and thorough investigation into the above referenced matter, the Commission requests all disciplinary records for the following individuals:

1.
2.
3.
4.
5.
6.
7.

Please provide the above information by **January 15, 2014**.  If you have questions or wish to discuss this submission please feel free to call.   I can be reached at **973-645-4689** between the hours of **7:30 a.m. and 4:00 p.m.** We appreciate your cooperation with the Equal Employment Opportunity Commission in this matter.

Sincerely,

December 30, 2013
Date

Dana M. Marucci
Investigator
(973) 645-4689

# Exhibit D



**MARGOLIS EDELSTEIN**

Attorneys At Law
www.margolisedelstein.com

EMERY J. MISHKY, ESQ.
Direct Dial No.: 908-790-7761
emishky@margolisedelstein.com

**NORTH NEW JERSEY OFFICE:**
**Connell Corporate Center**
**400 Connell Drive**
**Suite 5400**
**Berkeley Heights, NJ  07922**
**908-790-1401**
**Fax 908-790-1486**

SOUTH NEW JERSEY OFFICE:*
100 Century Parkway
Suite 200
Mt. Laurel, NJ 08054a
856-727-6000
Fax 856-727-6017

PHILADELPHIA OFFICE:*
The Curtis Center
170 S. Independence Mall  West
Suite 400E
Philadelphia, PA  19106-3337
215-922-1100
Fax 215-922-1772

HARRISBURG OFFICE:*
3510 Trindle Road
Camp Hill, PA  17011
717-975-8114
Fax 717-975-8124

PITTSBURGH OFFICE:*
522 William Penn place
Suite 3300
Pittsburgh, PA 15219
412-281-4256
Fax 412-642-2380

SCRANTON OFFICE:
220 Penn Avenue
Suite 305
Scranton, PA  18503
570-342-4231
Fax 570-342-4841

DELAWARE OFFICE:
750 Shipyard Drive
Suite 102
Wilmington, DE 19801
302-888-1112
Fax 302-888-1119

*Member of the Harmonie Group

February 12, 2014

Dana M. Marucci, Investigator
U.S. Equal Employment Opportunity Commission
Newark Area Office
1 Newark Center, 21ˢᵗ Floor
Newark, NJ 07102-5233

Re:    Johnson v. City of Long Branch
       Our File Number: EJM / 51150.5-00017
       EEOC Charge No.: 17E-2013-00267

Dear Mr. Marucci:

    This office represents the City of Long Branch in the above captioned Equal Employment Opportunity Commission ("EEOC") charge filed by Mr. Lyndon Johnson. We are responding to your letter of December 30, 2013.

    We are preparing materials responsive to your letter request. Due to the scope of the request and the number of persons involved this is a time consuming task. Before we produce the materials requested we request written agreement to accommodate our duties of maintaining privacy and confidentiality owed to our employees and past employees with respect to the documents requested.

    We request that the EEOC agree to protect the confidentiality of the documents and information as requested by its correspondence dated December 30, 2013; as a response would involve the disclosure of confidential information and sensitive employment and personal information. The EEOC agrees that all designated "Confidential" material shall be used by the EEOC solely for the purposes of evaluation of the above-captioned matter.  The EEOC agrees that it shall not use or reveal designated "Confidential" materials either directly, or indirectly, for any business, commercial, competitive, personal or other purpose, and such material shall not be disclosed by the EEOC to anyone other than as set forth above unless and until the restrictions herein are removed either by written agreement between EEOC and the producer or by Order of a Court

Page 2                                                                    February 12, 2014
Re:  Johnson v. City of Long Branch
Our File No.:   EJM / 51150.5-00017 / 2013014739

of competent jurisdiction.  It is, however, understood that the EEOC may form opinions and conclusion relating to the above-captioned matter based on its evaluation of Confidential material provided, but that such opinions and conclusions shall not reveal the content of such Confidential materials except by prior written agreement.

The EEOC agrees that no material designated "Confidential" material shall be provided, published, or otherwise revealed, in whole or in part, other than in the form of the EEOC's opinions and conclusions, as set forth above, to the claimant Lyndon B. Johnson and/or his counsel, representative, or the like.

Please indicate your agreement to the terms set forth in this correspondence by signing below, and returning to our office.

Very truly yours,

MARGOLIS EDELSTEIN

By: _____
        EMERY J. MISHKY

EJM/ms


*************************************************************************

Agreed to:


Dated:                               By:_____
                                          Dana M. Marucci
                                          Investigator
                                          On behalf of the EEOC

**Exhibit E**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Newark Area Office**

1 Newark Center, 21ᵗʰ Floor
Newark, NJ 07102-5233
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Newark Status Line: (866) 408-8075
Newark Direct Dial: (973) 645-4684
TTY (973) 645-3004
FAX (973) 645-4524

Emery Mishky, Esq.
Margolis Edelstein LLP
Connell Corporate Center
400 Connell Dr., Suite 5400
Berkeley Heights, NJ 07922

Re: Johnson v. City of Long Branch, 17E-2013-00267

Dear Mr. Mishky:

This is to address your request for the Commission to enter into a confidentiality agreement before the production of certain information, as referenced in your letter dated February 12, 2014.

The Commission is prohibited from disclosing charges and charge information to the general public, according to Sections 706(b) and 709(e) of Title VII. Section 2000e-8(e) further provides, "it shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information." Further, the Privacy Act of 1974 prohibits the EEOC from disclosing any record in any EEOC system of records without the prior written consent of the individual to whom the record pertains, unless disclosure is specifically permitted by the act.

Similarly, the Freedom of Information Act ("FOIA") 5 U.S.C. 552 (1988) provides that any person has an enforceable right of access to federal agency records except to the extent that such records are protected from disclosure by one or more of nine exemptions. The FOIA includes these exemptions in order to protect private party interests. As such, the Commission's practice is to deny the Freedom of Information Act request of a non-party for the investigatory file pursuant to exemption 3 of the FOIA, 5 U.S.C. 552(b)(3), which incorporates the limits of confidentiality specifically granted in other statutes.

As the above indicates, this agency is forbidden from disclosing charge information entrusted to it except under strictly defined circumstances.  We provide the above explanations to dispel fears that confidentiality cannot be guaranteed.  In the normal course of work, we obtain private information of many types, including compensation, medical, financial.  Our statutes protect its confidentiality, as does our database and our staff.

Therefore, please be advised that the Commission simply cannot enter into such an agreement.  The Commission requires all of the outstanding information requested in its request for information dated December 30, 2013 in order to complete its investigation and will exhaust all administrative steps to obtain same.  Accordingly, please be advised that failure to submit all of the outstanding information identified in our request for information on or before April 16, 2014 will result in the Commission issuing a subpoena, pursuant to the appropriate statute and EEOC guidelines.

I thank you for your anticipated cooperation.  Should you have any questions, my direct line is (973) 645-5975.

Date:

Sincerely yours,

**Philip Dudt**
**Investigator**

**Exhibit F**

**PHILIP DUDT - Re: Johnson v. City of Long Branch**

**From:**    Emery Mishky <emishky@margolisedelstein.com>
**To:**        PHILIP DUDT <PHILIP.DUDT@eeoc.gov>
**Date:**    5/21/2014 4:06 PM
**Subject:**  Re: Johnson v. City of Long Branch

Mr. Dudt:

I have a response from my client. My Client has been advised by the Police Officers' Union, that my client is not authorized to release the information that you seek absent a Court Order. Under the circumstances, my client cannot make production as requested. Please let me know if you need any further information from me. Of course, I am also available to discuss.

Emery

On Fri, May 2, 2014 at 9:04 AM, PHILIP DUDT <PHILIP.DUDT@eeoc.gov> wrote:
> Emery,
> Sure, it's no problem. Thanks. Have a good weekend.
> Phil
>
> >>> Emery Mishky <emishky@margolisedelstein.com> 5/2/2014 9:00 AM >>>
> Mr. Dudt:
>
> I did indeed receive your correspondence and immediately commenced a dialog with my client to address your position. I am, and have been, actively involved in that dialog, and anticipate an end point decision within a few business days. May I let you know by Monday or Tuesday of next week? Of course hoping for earlier.
>
> Emery
>
>
> On Fri, May 2, 2014 at 8:04 AM, PHILIP DUDT <PHILIP.DUDT@eeoc.gov> wrote:
> > Dear Mr. Mishky:
> > I have previously sent you a correspondence dated April 2, 2014, which addressed your confidentiality concerns as well as set a deadline of 4/16/2014 to produce the outstanding information. To date, we have not received same. We indicated that failure to adhere to this date would result in the issuance of a subpoena, pursuant to the appropriate statute and EEOC guidelines. Kindly contact me upon receipt of this e-mail to advise of the status of the submission. I can be reached at (973) 645-5975. Thanks for your assistance in this matter.
> > Philip Dudt
> > Investigator

--



Emery J. Mishky, Esq.
office: 908-790-7761 fax: 908-790-1486
mobile: 732-406-1601
email: emishky@margolisedelstein.com

# Exhibit G



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Newark Area Office**

1 Newark Center, 21ˢᵗ Floor
Newark, NJ  07102-5233
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Newark Status Line: (866) 408-8075
Newark Direct Dial: (973) 645-4684
TTY (973) 645-3004
FAX (973) 645-4524

Emery Mishky, Esq.
Margolis Edelstein LLP
Connell Corporate Center
400 Connell Dr., Suite 5400
Berkeley Heights, NJ 07922

Re: Johnson v. City of Long Branch, 17E-2013-00267

Dear Mr. Mishky:

I have received your response to the Commission's letter dated April 2, 2014.   You have indicated that Respondent will not produce the information that the Commission has requested in order to complete its investigation.

It is the EEOC's position that unless we receive a full response to our request for information by _**July 17, 2014**_, the Commission will infer that your refusal to cooperate with the investigation means that examination of your evidence will support the Charging Party's allegations, and the Commission will render a determination to that effect.

I thank you for your anticipated cooperation.  Should you have any questions, my direct line is (973) 645-5975.

Sincerely yours,

Date:  6 - 30 - 2014

**Philip Dudt**
**Investigator**

# Exhibit H

EEOC Form 136
(11/09)

# UNITED STATES OF AMERICA
### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# SUBPOENA

TO:  Howard Woolley
     Business Administrator
     Long Branch Police Department
     344 Broadway
     Long Branch, NJ 07740

NO: NY-A14-011

IN THE MATTER OF:  Johnson v. Long Branch Police Dept.

Charge No. 17E-2013-00267

Having failed to comply with previous request(s) made by or on behalf of the undersigned Commission official, YOU ARE HEREBY REQUIRED AND DIRECTED TO:

☐ Testify before:             ☐ Produce and bring * or   ☒ Mail * the documents described below to:

☐ Produce access to the evidence described below for the purpose of examination or copying to:

Philip Dudt, Investigator                     of the Equal Employment Opportunity Commission

at USEEOC, One Newark Ctr., 21st flr., Newark, NJ 07102     on August 8, 2014     at 3:00 p.m.     o'clock

The evidence required is
1. Provide a copy of any and all documents which refer to or address the disciplinary records for ████████████████████

This subpoena is issued pursuant   ☒ (Title VII) 42 U.S.C. 2000e-9   ☐ (ADEA) 29 U.S.C. 626(a)   ☐ (EPA) 29 U.S.C. 209
                                    ☐ (ADA)  42 U.S.C. 12117(a)   ☐ (GINA) 42 U.S.C. 2000ff-6

ISSUING OFFICIAL (Typed name, title and address)          ON BEHALF OF THE COMMISSION

     John Waldinger, Area Director
     USEEOC, One Newark Ctr., 21st flr.
     Newark, NJ 07102                          _____   7-23-14
                                                                          Date

*NOTICE TO PERSON SUBPOENAED - The Commission will not pay witness fees or travel expenses for the delivery of required documents to a Commission office unless the box "Testify before" is also checked on the subpoena.

## SUBPOENA
### PROOF OF SERVICE

I hereby certify that being over 18 years of age and not a party to or any
way interested in these proceedings, I duly served a copy of the subpoena
on the persons named in this subpoena.

☐ In person

☑ by certified mail

☐ by leaving a copy with a responsible person, at the
principal office or place of business, to wit:

Name ___Philip Dudt___

Position ___Investigator___

Address ___USEEOC ONE Newark Ctr, 21st Flr Newark, NJ 07102___

On ___7-23-2014___
_____
(Mo, day & year)

_____
(Signature of person making service)

___Investigator___
_____
(Official title, if any)

State ___NJ___

Parish/
County ___Essex___


### CERTIFICATION OF ATTENDANCE

I certify that the person named herein was in attendance and satisfactorily
produced the records requested or gave oral testimony at

_____

On _____
(Mo, day & year)

_____
(Signature of person making service)

_____
(Official title, if any)


Page 2 of Form 136 (11/09)

TX Status Report

Date: 07/23/2014 10:55pm
Name: EEOC
ID:   919736454524

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Newark Area Office

1 Newark Center, 21st Floor
Newark, NJ 07102-5233
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Newark Status Line: (866) 408-8075
Newark Direct Dial: (973) 645-3984
TTY (973) 645-3004
FAX (973) 645-3528
Website www.eeoc.gov

## FAX TRANSMITTAL

TO: _Emery Mukley, Esq_  Fax # (908) 790 - 1486

FROM: _Philip Oudt_  Phone # (973) 645-5775

DATE: _7-23_  No. of Pages (including this) _2_

SUBJECT: _Subpoena # NY-A14-011_

Message: _See attached_

_____

_____

_____

_____

_____

**Confidentiality Note:** The information contained in this facsimile transmittal sheet and the document(s) that follow are for the exclusive use of the addressee and may contain information protected by the Privacy Act, 5 U.S.C. 552a, or otherwise confidential, privileged, or non-disclosable information. If the recipient of this facsimile is not the addressee or is not the person responsible for delivering this facsimile to the addressee, the recipient may violate the law by reading, photocopying, distributing or otherwise using this facsimile transmission or its contents in any way. If the recipient has received this facsimile transmission in error, call the sending office immediately.

| No.<br>048 | Date/Time<br>07/23/2014 10:54pm | Comm. Type<br>TX | Duration<br>'00"51 | Sender/Destination<br>919087901486 | Pages<br>2 | Results<br>OK |

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Howard Woollen, Bus. Adm,
Long Branch Police Dept
344 Broadway
Long Branch, NJ 07740

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   □ Agent
                  □ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:         □ No

3. Service Type
   ☒ Certified Mail    □ Express Mail
   □ Registered        □ Return Receipt for Merchandise
   □ Insured Mail      □ C.O.D.

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
   (Transfer from service label)

   7010 2780 0001 8787 2574

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

# Exhibit I

**MARGOLIS EDELSTEIN**
400 Connell Drive-Suite 5400
Berkeley Heights, NJ 07922-2775
(908) 790-1401
Attorney for Defendant, City of Long Branch
EJM/51150.5-00017
Attorney ID No.:

---

| | |
|---|---|
| LYNDON JOHNSON | SUPERIOR COURT OF NEW JERSEY |
| | DEPART. OF LAW & PUBLIC SAFETY |
| Complainant, | DIVISION  ON CIVIL RIGHTS |
| | DOCKET NUMBER: |
| | EEOC CHARGE NO. 17E |
| v. | |
| | Civil Action |
| CITY OF LONG BRANCH | |
| | |
| Respondent, | **NOTICE  OF MOTION TO QUASH** |
| | **SUBPOENA** |

---

TO:   John Waldinger, Enforcement Supervisor
        c/o Equal Employment Opportunity Commission
        Newark Area Office
        1 Newark Center
        21st Floor
        Newark, NJ 07102

COUNSELOR:


PLEASE TAKE NOTICE that the undersigned respond to the U.S. Equal Employment Opportunity Commission, at the Newark Area Office, by filing herein Motion to  Quash Subpoena.  Attached hereto is a Certification upon which I shall rely.

I hereby certify that the original Notice of Motion is filed with the  U.S. Equal Employment Opportunity Commission, Newark, New Jersey via Lawyers Service mail, and a copy was served upon:

RECEIVED

2014 AUG -7  PM 12: 51

EEOC NEWARK
AREA OFFICE

John Waldinger, Enforcement Supervisor
c/o Equal Employment Opportunity Commission
Newark Area Office
1 Newark Center
21st Floor
Newark, NJ 07102

James L. Plosia, Jr., Esq.
Apruzzese, McDermott, Mastro & Murphy, PC
25 Independence Boulevard
Warren, New Jersey 07059

David DeFillippo, Esq.
Detzky Hunter & DeFillippo, LLC
45 Court Street
Freehold, NJ 07728

via Lawyer Service, on  the date hereof pursuant to R.1:6-3.


By: _____
STEPHANIE Y. CHO, ESQ.

Dated:

**MARGOLIS EDELSTEIN**
400 Connell Drive-Suite 5400
Berkeley Heights, NJ  07922-2775
(908) 790-1401
Attorney for Defendant, City of Long Branch
EJM/51150.5-00017
Attorney ID No.:

| | |
|---|---|
| LYNDON JOHNSON | SUPERIOR COURT OF NEW JERSEY |
| | DEPART. OF LAW & PUBLIC SAFETY |
| Complainant, | DIVISION ON CIVIL RIGHTS |
| | EEOC CHARGE NO. 17E |
| v. | Civil Action |
| CITY OF LONG BRANCH | |
| Respondent, | **CERTIFICATION** |

I, STEPHANIE Y. CHO, of full age, hereby certify as follows:

1.      I am an attorney at law of the State of New Jersey and associated with Margolis Edelstein and entrusted with the defense of City of Long Branch in the above-captioned matter.

2.      The claimant, Lyndon Johnson, alleges wrongful discharge from his position with the Police Department of City of Long Branch.

3.      The respondent received a subpoena for release of disciplinary records of various Officers.  (See Attached Exhibit A, a copy of the Subpoena)

4.      Prior requests for these records were formally objected to by Mr. David DeFillippo, counsel for Long Branch PBA Local #10. (See Attached Exhibit B, a copy of Mr. DeFillippo's correspondences dated June 23, 2014 and June 9, 2014)

5.      The subpoenaed records are objected to under Internal Affairs Policy and Procedures (Rev. 2014) issued by the New Jersey General's Office since these records are

Confidential. (See Attached Exhibit C, a copy of Internal Affairs Policy and Procedures (Rev. 2014).

6.      The relevant paragraphs of Internal Affairs Policy and Procedures under Page 42 of the Guideline by New Jersey General's Office are cited below:

**Confidentiality**

**The nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information. The contents of the internal investigation case files shall be retained in an Internal Affairs Unit and clearly marked as confidential.   The information and records of an internal investigation shall only be released under the following limited circumstances:**

> **In the event that administrative charges have been brought against an officer and a hearing will be held, a copy of all discoverable material shall be provided to the hearing officer in advance of hearing.**

> **In the event that the subject officer, agency or governing jurisdiction has been named as a defendant in a lawsuit arising out of the specific incident covered by an internal investigation, a copy of the internal investigation reports may be released to the attorney representing the subject officer, agency or jurisdiction.**

> **Upon request or at the direction of the county prosecutor or Attorney General.**

> **Upon a court order.**

7.      The subpoena seeks confidential disciplinary records of various Officers, who have no involvement in the claimant's matter, and this is contrary to the Policy and Procedures of Internal Affairs which has strict requirements for release of such records.

8.      As previously stated, the respondent is not in privy to disclose the subpoenaed records unless EEOC meets the criteria as set-forth in the Policy and Procedures, or in the alternative, guarantee Confidentially of these records.

9.      Accordingly, the respondent object to the subpoena of these disciplinary records and seek to quash the subpoena.

10.      I hereby certify that the foregoing statements made by me are true.  I am aware that

if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

MARGOLIS EDELSTEIN
Attorneys for Respondent, City of Long Branch

By: _____
STEPHANIE Y. CHO, ESQ.

DATED:

# EXHIBIT

# A

07/23/2014 10:55pm      EEOC              919738454524              #048        Page 02/02

EEOC Form 136
(11/09)

# UNITED STATES OF AMERICA
### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## SUBPOENA

TO: Howard Woolley
Business Administrator
Long Branch Police Department
344 Broadway
Long Branch, NJ 07740

NO: NY-A14-011

IN THE MATTER OF: Johnson v. Long Branch Police Dept.

Charge No. 17E-2013-00267

Having failed to comply with previous request(s) made by or on behalf of the undersigned Commission official, YOU ARE HEREBY REQUIRED AND DIRECTED TO:

☐ Testify before      ☐ Produce and bring * or      ☒ Mail * the documents described below to:

☐ Produce access to the evidence described below for the purpose of examination or copying to:

Philip Dudt, Investigator

of the Equal Employment Opportunity Commission

at USEEOC, One Newark Ctr., 21st flr., Newark, NJ 07102      on August 8, 2014      at 3:00 p.m.      o'clock

The evidence required is
1. Provide a copy of any and all documents which refer to or address the disciplinary records for ██████ and ██████

This subpoena is issued pursuant      ☒ (Title VII) 42 U.S.C. 2000e-9      ☐ (ADEA) 29 U.S.C. 626(a)      ☐ (EPA) 29 U.S.C. 209
☐ (ADA) 42 U.S.C. 12117(a)      ☐ (GINA) 42 U.S.C. 2000ff-6

ISSUING OFFICIAL (Typed name, title and address)                    ON BEHALF OF THE COMMISSION

John Weldinger, Area Director
USEEOC, One Newark Ctr., 21st flr.
Newark, NJ 07102                                    7-23-14                    
                                                    Date

*NOTICE TO PERSON SUBPOENAED - The Commission will not pay witness fees or travel expenses for the delivery of required documents to a Commission office unless the box "Testify before" is also checked on the subpoena.

# EXHIBIT B



**Detzky**
**Hunter**
**& DeFillippo, LLC**

\*Michael L. Detzky, Esq.
Stephen B. Hunter, Esq.
David J. DeFillippo, Esq.

\*Also Member of NY Bar

Freehold Office:
45 Court Street
Freehold, New Jersey 07728
732-780-3090
Fax: 732-308-3866
mldetzky@detzkylaw.com
davedefillippo@aol.com

Somerville Office:
33 North Bridge Street
Somerville, New Jersey 08876
908-707-4560
Fax: 908-707-0899
dhlaw@optonline.net

June 23, 2014

Reply to: Freehold

Philip Dudt, Investigator
U.S. Equal Employment Opportunity Commission
One Newark Center, 21st Floor
Newark, NJ 07102-5233

Re:   **Johnson vs. City of Long Branch**
      **17E-2013-00267**

Dear Investigator Dudt:

Please be advised that the undersigned represents the members of the Long Branch PBA Local #10 (hereinafter referred to as the PBA). I am in receipt of a letter you forwarded to Emery Mishky, Esq., dated April 2, 2014, relative to a complaint filed against the City by Lt. Lyndon Johnson of the Long Branch Police Department. This correspondence was forwarded to my office by the City's attorney, James L. Plosia, Jr., Esq.

Mr. Plosia further advises that the counsel for Lt. Johnson, whom I believe is Jessica L. Arndt, Esq., has requested that the internal affairs or other disciplinary records of various members of the PBA. To the extent that my understanding is correct, please accept this correspondence as the PBA's formal objection to disclosure of any disciplinary or other internal affairs records of our members to any third party.

As reinforced in the Internal Affairs Policy and Procedures (Rev. September 2011) issued by the New Jersey Attorney General's Office[1], such records are clearly confidential. On Page 47 of the aforesaid Guidelines, the following passage appears:

> The nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information. The contents of the internal investigation case files shall be retained in an Internal Affairs unit and clearly marked as confidential. The information and records of an internal investigation shall only be release under the following limited circumstances:

---

[1] Pursuant to N.J.S.A. 40A:14-181 [e]very law enforcement agency shall adopt and implement guidelines which shall be consistent with the "Internal Affairs Policy and Procedures" adopted by the Attorney General's Office.

- In the event that administrative charges have been brought against and officer and a hearing will be held, a copy of all discoverable material shall be provided to the hearing officer in advance of hearing.

- In the event that the subject officer, agency or governing jurisdiction has been named as a defendant in a lawsuit arising out of the specific incident covered by an internal investigation, a copy of the internal investigation reports may be released to the attorney representing the subject officer, agency or jurisdiction.

- Upon request or at the direction of the county prosecutor or Attorney General.

- Upon a court order. (See attached).

To my knowledge, none of the circumstances highlighted above are present in the case pending before the Commission.

Respectfully submitted,

David J. DeFillippo

DJD/ca

Cc:     Jessica L. Arndt, Esq. (Via email)
        James L. Plosia, Jr., Esq. (Via email)
        Scott Beaver, PBA Delegate (Via email)

# INTERNAL AFFAIRS POLICY & PROCEDURES

Issued August 1991
Revised November 1992
Revised November 2000
Revised September 2011

## Table of Contents

INTERNAL AFFAIRS POLICY & PROCEDURES . . . . . . . . . . . . . . . . . . . . . . 1

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fundamentals of the Disciplinary Process . . . . . . . . . . . . . . . . . . . . . . . 7
    Policy Management System . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Prevention of Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Responsibility for Discipline . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    Fitness for Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Internal Affairs Unit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    Duties and Responsibilities . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Selection of Personnel for the Internal Affairs Unit . . . . . . . . . . . . 13
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Accepting Reports of Officer Misconduct . . . . . . . . . . . . . . . . . . . . . . . . .
    Accepting Reports Alleging Officer Misconduct . . . . . . . . . . . . . . 16
    Immediate Suspension Pending Investigation and Disposition . . . . . 18

Investigation of Internal Complaints . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    Time Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    Investigation and Adjudication of Minor Complaints . . . . . . . . . . . 20
    Investigation and Adjudication of Serious Complaints . . . . . . . . . . 21
    Domestic Violence Incidents Involving Agency Personnel . . . . . . . . 22
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Internal Affairs Investigation Procedures . . . . . . . . . . . . . . . . . . . . . . . . .
    Interviewing the Complainant and Civilian Witnesses . . . . . . . . . . 27
    Reports, Records and Other Documents . . . . . . . . . . . . . . . . . . . 27
    Physical Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Photographs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Physical Tests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Drug Testing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Polygraph . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Search and Seizure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Electronic Surveillance . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    Lineups . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    Investigation of Firearms Discharges . . . . . . . . . . . . . . . . . . . . 34
    Collateral Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

09/2011

## Retention Schedule

Investigative records created during an internal affairs investigation are included in the "Records Retention and Disposition Schedule for Local Police Departments" issued by the New Jersey Division of Archives and Records Management. Under the schedule, files concerning a criminal homicide must be permanently maintained. The schedule also requires any other file involving a criminal matter which resulted in the arrest of the subject officer must be maintained for 75 years. While the schedule further suggests that all other criminal or administrative internal affairs investigative records be maintained for at least five years, agencies should maintain these files as they relate to a particular officer for the career of that officer plus five years.

Agencies are under no obligation to purge their records at the intervals outlined above. Agencies may adopt longer retention schedules if a longer schedule benefits the agency. In the case of internal affairs investigative records, longer retention times will provide agencies with the resources and evidence necessary to assist with the defense of civil lawsuits.

While the internal affairs records of other types of law enforcement agencies are not yet specified by the Division of Archives and Records Management, it would be appropriate for all law enforcement agencies to follow essentially the same retention schedule.

## Confidentiality

The nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information. The contents of the internal investigation case files shall be retained in the internal affairs unit and clearly marked as confidential. The information and records of an internal investigation shall only be released under the following limited circumstances:

- In the event that administrative charges have been brought against an officer and a hearing will be held, a copy of all discoverable materials shall be provided to the officer and the hearing officer in advance of the hearing.

- In the event that the subject officer, agency or governing jurisdiction has been named as a defendant in a lawsuit arising out of the specific incident covered by an internal investigation, a copy of the internal investigation reports may be released to the attorney representing the subject officer, agency or jurisdiction.

- Upon the request or at the direction of the county prosecutor or Attorney General.

- Upon a court order.

In addition to the foregoing, the law enforcement executive officer may authorize access a particular file or record for good cause. The request and the authorization should be in writing and the written authorization should specify who is being granted access, to which records access is being granted and for what time period access is permitted. The authorization should

also specify any conditions, such as one in which the files may be reviewed only at the internal affairs office and may not be removed. The law enforcement executive should grant such access sparingly, keeping in mind the purpose of the internal affairs process and the nature of many of the allegations against officers.

Agencies may receive subpoenas directing the production of internal affairs investigative records. Before responding to the subpoena, the police executive or internal affairs investigator should consult with the agency's legal counsel to determine whether the subpoena is valid and reasonable. Invalid or unreasonable subpoenas may be modified or quashed by the court. However, the court will require the agency seeking to modify or quash the subpoena to file the appropriate motion with the court.

If the release of internal affairs documents is appropriate, the agency should inventory the reports they are releasing and obtain a signed receipt.

## Reporting

The internal affairs unit should prepare periodic reports for the law enforcement executive that summarize the nature and disposition of all misconduct complaints received by the agency. This report should be prepared at least quarterly, but may be prepared more often as directed by the executive. The report should include the principal officer, the allegation, the complainant, the age, sex, race and other complainant characteristics which might signal systematic misconduct by any member of the department and the status of the investigation. Concluded complaints should be recorded and the reasons for termination explained. See example in Appendix P.

This report shall be considered a confidential, internal work product. Dissemination of the report should be limited to command personnel, the county prosecutor and the appropriate authority.

### Requirement 9

> The agency must submit to the county prosecutor a report summarizing its internal affairs activity on a form established by the county prosecutor for that purpose.

Every law enforcement agency will report internal affairs activity to the county prosecutor on an internal affairs summary report form. This form simply summarizes the number of cases by type of case, which were received and disposed of during the reporting period. See the example in Appendix S. Each county prosecutor will provide those law enforcement agencies in his or her jurisdiction with the report forms to be used, instructions on completing the forms, and a reporting schedule.

Honesty is an essential job function for every police officer in New Jersey. Police officers who are not committed to the truth, who cannot convey facts and observations in an accurate and impartial manner and whose credibility can be impeached in a court of law, cannot advance the interests of the State in criminal matters. In addition, defendants in criminal



**Detzky Hunter & DeFillippo, LLC**

*Michael L. Detzky, Esq.
Stephen B. Hunter, Esq.
David J. DeFillippo, Esq.

*Also Member of NY Bar

Reply to: Freehold

Freehold Office
45 Court Street
Freehold, New Jersey 07728
732-780-3090
Fax 732-308-3866
mldetzky@detzkylaw.com
davedefillippo@aol.com

Somerville Office
33 North Bridge Street
Somerville, New Jersey 08876
908-707-4560
Fax 908-707-0899
dhlaw@optonline.net

June 9, 2014

12859

**Via Federal Express**
Honorable John Schuster, A.L.J.
Office of Administrative Law
9 Quakerbridge Plaza
Mercerville, (Hamilton Twp.), NJ 08619

Re:    **Lyndon Johnson v. City of Long Branch Dept. of Public Safety**
        **OAL Docket No. CSV 09884-2012 S**

Dear Judge Schuster:

Please be advised that the undersigned represents the members of the Long Branch PBA Local #10 (hereinafter referred to as the PBA). I am in receipt of a letter dated June 4, 2014 from Jessica L. Arndt, Esq., counsel for Lt. Lyndon Johnson, as well as the attached Subpoena Duces Tecum addressed to the Long Branch Police Department, relative the above matter. Pursuant to the Subpoena issued by Ms. Arndt, she is requesting that the Police Department produce the following:

        Disciplinary Record for ███████████
        Disciplinary Record for ███████████
        Disciplinary Record for ███████████

I have conferred with James L. Plosia, Jr., Esq., counsel for the City in the above captioned matter, and am of the belief that the City intends to oppose the disclosure of the aforesaid records.

Kindly accept this correspondence as the PBA's formal objection to the disclosure of any disciplinary records of the officers referenced above and referred to in the Subpoena issued by Ms. Arndt. As reinforced in the Internal Affairs Policy and Procedures (Rev. September 2011)

issued by the New Jersey Attorney General's Office[1], such records are clearly confidential.  On Page 47 of the aforesaid Guidelines, the following passage appears:

The nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information.  The contents of the internal investigation case files shall be retained in an Internal Affairs unit and clearly marked as confidential.  The information and records of an internal investigation shall only be release under the following limited circumstances:

- In the event that administrative charges have been brought against and officer and a hearing will be held, a copy of all discoverable material shall be provided to the hearing officer in advance of hearing.

- In the event that the subject officer, agency or governing jurisdiction has been named as a defendant in a lawsuit arising out of the specific incident covered by an internal investigation, a copy of the internal investigation reports may be released to the attorney representing the subject officer, agency or jurisdiction.

- Upon request or at the direction of the county prosecutor or Attorney General.

- Upon a court order. (See attached).

Respectfully, none of the circumstances highlighted above are present in the case pending before Your Honor.  Moreover, the PBA respectfully submits that there is no justification for the issuance of the requisite court order – assuming an application is subsequently presented to Your Honor in this matter.

Accordingly, the PBA objects to the disclosure of the aforesaid disciplinary records.

Respectfully submitted,

DJD/ca                                        David J. DeFilippo

Cc:    Jessica L. Arndt, Esq. (Via email w/encl.)
        James L. Plosia, Jr, Esq.  (Via email w/encl.)
        Scott Beaver, PBA Delegate (Via email w/encl.)

---

[1] Pursuant to N.J.S.A. 40A:14-181 "[e]very law enforcement agency shall adopt and implement guidelines which shall be consistent with the "Internal Affairs Policy and Procedures" adopted by the Attorney General's Office.

# INTERNAL AFFAIRS POLICY & PROCEDURES

Issued August 1991
Revised November 1992
Revised November 2000
Revised September 2011

## Table of Contents

INTERNAL AFFAIRS POLICY & PROCEDURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fundamentals of the Disciplinary Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Policy Management System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Prevention of Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Responsibility for Discipline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    Fitness for Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Internal Affairs Unit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    Duties and Responsibilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Selection of Personnel for the Internal Affairs Unit . . . . . . . . . . . . . . . . . . . . . . . . 13

Accepting Reports of Officer Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    Accepting Reports Alleging Officer Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    Immediate Suspension Pending Investigation and Disposition . . . . . . . . . . . . . . . . 16

Investigation of Internal Complaints . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    Time Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    Investigation and Adjudication of Minor Complaints . . . . . . . . . . . . . . . . . . . . . . . 20
    Investigation and Adjudication of Serious Complaints . . . . . . . . . . . . . . . . . . . . . . 21
    Domestic Violence Incidents Involving Agency Personnel . . . . . . . . . . . . . . . . . . . 22
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Internal Affairs Investigation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Interviewing the Complainant and Civilian Witnesses . . . . . . . . . . . . . . . . . . . . . . 27
    Reports, Records and Other Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Physical Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Photographs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Physical Tests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Drug Testing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Polygraph . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Search and Seizure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    Electronic Surveillance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    Lineups . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    Investigation of Firearms Discharges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    Collateral Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

09/2011

## Retention Schedule

Investigative records created during an internal affairs investigation are included in the "Records Retention and Disposition Schedule for Local Police Departments" issued by the New Jersey Division of Archives and Records Management.  Under the schedule, files concerning a criminal homicide must be permanently maintained.  The schedule also requires any other file involving a criminal matter which resulted in the arrest of the subject officer must be maintained for 75 years.  While the schedule further suggests that all other criminal or administrative internal affairs investigative records be maintained for at least five years, agencies should maintain these files as they relate to a particular officer for the career of that officer plus five years.

Agencies are under no obligation to purge their records at the intervals outlined above. Agencies may adopt longer retention schedules if a longer schedule benefits the agency.  In the case of internal affairs investigative records, longer retention times will provide agencies with the resources and evidence necessary to assist with the defense of civil lawsuits.

While the internal affairs records of other types of law enforcement agencies are not yet specified by the Division of Archives and Records Management, it would be appropriate for all law enforcement agencies to follow essentially the same retention schedule.

## Confidentiality

The nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information.  The contents of the internal investigation case files shall be retained in the internal affairs unit and clearly marked as confidential.  The information and records of an internal investigation shall only be released under the following limited circumstances:

- In the event that administrative charges have been brought against an officer and a hearing will be held, a copy of all discoverable materials shall be provided to the officer and the hearing officer in advance of the hearing.

- In the event that the subject officer, agency or governing jurisdiction has been named as a defendant in a lawsuit arising out of the specific incident covered by an internal investigation, a copy of the internal investigation reports may be released to the attorney representing the subject officer, agency or jurisdiction.

- Upon the request or at the direction of the county prosecutor or Attorney General.

- Upon a court order.

In addition to the foregoing, the law enforcement executive officer may authorize access a particular file or record for good cause.  The request and the authorization should be in writing and the written authorization should specify who is being granted access, to which records access is being granted and for what time period access is permitted.  The authorization should

also specify any conditions, such as one in which the files may be reviewed only at the internal affairs office and may not be removed. The law enforcement executive should grant such access sparingly, keeping in mind the purpose of the internal affairs process and the nature of many of the allegations against officers.

Agencies may receive subpoenas directing the production of internal affairs investigative records. Before responding to the subpoena, the police executive or internal affairs investigator should consult with the agency's legal counsel to determine whether the subpoena is valid and reasonable. Invalid or unreasonable subpoenas may be modified or quashed by the court. However, the court will require the agency seeking to modify or quash the subpoena to file the appropriate motion with the court.

If the release of internal affairs documents is appropriate, the agency should inventory the reports they are releasing and obtain a signed receipt.

## Reporting

The internal affairs unit should prepare periodic reports for the law enforcement executive that summarize the nature and disposition of all misconduct complaints received by the agency. This report should be prepared at least quarterly, but may be prepared more often as directed by the executive. The report should include the principal officer, the allegation, the complainant, the age, sex, race and other complainant characteristics which might signal systematic misconduct by any member of the department and the status of the investigation. Concluded complaints should be recorded and the reasons for termination explained. See example in Appendix P.

This report shall be considered a confidential, internal work product. Dissemination of the report should be limited to command personnel, the county prosecutor and the appropriate authority.

### Requirement 9

The agency must submit to the county prosecutor a report summarizing its internal affairs activity on a form established by the county prosecutor for that purpose.

Every law enforcement agency will report internal affairs activity to the county prosecutor on an internal affairs summary report form. This form simply summarizes the number of cases by type of case, which were received and disposed of during the reporting period. See the example in Appendix S. Each county prosecutor will provide those law enforcement agencies in his or her jurisdiction with the report forms to be used, instructions on completing the forms, and a reporting schedule.

Honesty is an essential job function for every police officer in New Jersey. Police officers who are not committed to the truth, who cannot convey facts and observations in an accurate and impartial manner and whose credibility can be impeached in a court of law, cannot advance the interests of the State in criminal matters. In addition, defendants in criminal

48



# INTERNAL AFFAIRS POLICY & PROCEDURES

Issued August 1991
Revised November 1992
Revised November 2000
Revised September 2011
Revised July 2014

# Table of Contents

INTERNAL AFFAIRS POLICY & PROCEDURES.................................................... 1

Table of Contents ................................................................................................. 1

Introduction ......................................................................................................... 3

Fundamentals of the Disciplinary Process ....................................................... 6
    Policy Management System ............................................................................ 6
    Prevention of Misconduct .............................................................................. 9
    Responsibility for Discipline ........................................................................ 10
    Fitness for Duty ............................................................................................ 11

Internal Affairs Unit .......................................................................................... 12
    Duties and Responsibilities .......................................................................... 12
    Selection of Personnel for the Internal Affairs Unit ..................................... 13

Accepting Reports of Officer Misconduct ....................................................... 14
    Accepting Reports Alleging Officer Misconduct ........................................... 14
    Immediate Suspension Pending Investigation and Disposition ................... 16

Investigation of Internal Complaints ............................................................... 18
    Time Limitations .......................................................................................... 18
    Investigation and Adjudication of Minor Complaints ................................... 19
    Investigation and Adjudication of Serious Complaints ................................. 20
    Domestic Violence Incidents Involving Agency Personnel ........................... 23

Internal Affairs Investigation Procedures ....................................................... 24
    Interviewing the Complainant and Civilian Witnesses ................................ 24
    Reports, Records and Other Documents ...................................................... 25
    Physical Evidence ........................................................................................ 25
    Photographs ................................................................................................. 25
    Physical Tests .............................................................................................. 26
    Drug Testing ................................................................................................ 26
    Polygraph .................................................................................................... 27
    Search and Seizure ...................................................................................... 27
    Electronic Surveillance ................................................................................ 29
    Lineups ........................................................................................................ 30
    Investigation of Firearms Discharges .......................................................... 30
    Collateral Issues .......................................................................................... 31

7/2014

Interviewing Members of the Department ......................................................................... 32
    General Background ..................................................................................................... 32
    *Criminal* Investigation, Officer Is *Subject* ................................................................. 35
    *Criminal* Investigation, Officer Is *Witness* ................................................................ 36
    *Administrative* Investigation, Officer Is *Subject* ........................................................ 36
    *Administrative* Investigation, Officer Is *Witness* ....................................................... 38
    Interviewing Procedures ............................................................................................. 38

Internal Affairs Records .................................................................................................. 40
    The Internal Affairs Report ......................................................................................... 40
    Internal Affairs Records ............................................................................................. 40
    Retention Schedule .................................................................................................... 41
    Confidentiality ............................................................................................................ 42
    Reporting ................................................................................................................... 43
    Personnel Records ..................................................................................................... 45

Risk Management Procedures ........................................................................................ 46

7/2014

# Introduction

*Internal Affairs Policy & Procedures* was first published in 1991. Updates to the policy were issued in 1992, 2000 and 2011. The purpose of the policy is to assist the State's law enforcement agencies with investigating and resolving complaints of police misconduct that originate with private citizens or are generated by the supervisors, officers or employees of a law enforcement agency. The goals of the policy are to enhance the integrity of the State's law enforcement agencies, improve the delivery of police services and assure the citizens of New Jersey that complaints of police misconduct are properly addressed. This policy can also be more broadly applied to non-law enforcement employees. *See* DCJ S.O.P. 11 (currently being revised to apply to all Department of Law and Public Safety employees).

Since the introduction of the policy, the process we call "internal affairs" has come under increasing scrutiny by the courts, the community and the media. In fact, it would be fair to say that the proper administration of the internal affairs function by the State's law enforcement agencies is a critical issue for the criminal justice system in New Jersey today.

The New Jersey Legislature recognized the importance of the internal affairs function in 1996 with the enactment of *N.J.S.A.* 40A:14-181. The statute provides that:

> Every law enforcement agency shall adopt and implement guidelines which shall be consistent with the guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety, and shall be consistent with any tenure or civil service laws, and shall not supersede any existing contractual agreements.

In addition, the courts, particularly the federal courts, have focused on the importance of the internal affairs function. They have come to perceive this function as an important means of protecting the constitutional rights and civil liberties of the state's citizens. Under the case law, law enforcement agencies must do three things under the internal affairs function. First, agencies must implement an internal affairs policy that provides for a meaningful and objective investigation of citizen complaints of police misconduct. Second, agencies must monitor and track the behavior of police officers for incidents of misconduct. Third, when officers are found to have engaged in misconduct, agencies must correct the behavior. The courts have with increasing frequency issued decisions that set minimum standards of performance for the internal affairs function.

In view of these developments, the Attorney General has issued, through the Division of Criminal Justice, this revised and updated version of *Internal Affairs Policy & Procedures*. The revisions attempt to incorporate and reflect the numerous changes that have occurred in law enforcement and the internal affairs function since the policy was first issued in 1991. The revised policy is also designed to assist law enforcement agencies in their efforts to comply with emerging legal principles governing the internal affairs function.

It is important for county and municipal law enforcement agencies to recognize that, as they conduct internal affairs investigations, they do so under the general supervision of the Attorney General. The Criminal Justice Act of 1970 designates the Attorney General as the State's chief law enforcement officer. (*N.J.S.A.* 52:17B-98). As such, the Attorney General is responsible for the general supervision of the State's law enforcement agencies to provide for the efficient administration of the criminal justice system. Subordinate law enforcement agencies, including county and municipal police forces, have a duty to cooperate with the

Attorney General to improve the administration of the criminal justice system, including the efficient delivery of police services. For county and municipal law enforcement agencies, cooperation in internal affairs matters begins with strict adherence to the Attorney General's policy requirements.

County and municipal law enforcement agencies must also recognize that they conduct internal affairs investigations, particularly those that involve allegations of criminal conduct, under the direct supervision of county prosecutors. County and municipal law enforcement agencies must inform the appropriate county prosecutor when allegations of police misconduct involve potential criminal conduct. In addition, county and municipal law enforcement agencies must confer with and follow the instructions given by the county prosecutor at all critical points in the investigative process. This is particularly true when the agency is in the process of gathering evidence, including the taking of statements, concerning allegations of criminal conduct.

The revised policy contains several mandates that, at the Attorney General's direction, every law enforcement agency must implement. However, the manner in which these agencies must implement these mandates is a decision that is left to the individual law enforcement agency's discretion. For instance, every agency must establish an internal affairs function. But the manner in which the mandate is satisfied is a decision left to the discretion of the individual agencies. Individual agencies shall decide, based on the characteristics of their jurisdiction and the workload of their agency, whether the internal affairs function is a full- or part-time unit and how many officers are assigned to work in that unit.

Other policy requirements that the Attorney General has determined are critical and must be implemented by every law enforcement agency include the following:

- Each agency must establish by written policy an internal affairs function.

- Each agency must accept reports of officer misconduct from any person, including anonymous sources, at any time.

- Where a preliminary investigation indicates the possibility of a criminal act on the part of the subject officer, the county prosecutor must be notified immediately. No further action should be taken, including the filing of charges against the officer, until the county prosecutor so directs.

- The agency must notify the county prosecutor immediately of any use of force by an officer that results in death or serious bodily injury.

- Each agency must thoroughly and objectively investigate all allegations against its officers.

- Each agency must notify its officers of complaints and their outcomes.

- Each agency must notify complainants of the outcome of their complaint.

- Each agency must establish and maintain an internal affairs records system which, at a minimum, will consist of an internal affairs index system and a filing system for all documents and records. In addition, each agency shall establish a protocol for monitoring and tracking the conduct of all officers.

7/2014

- Each agency must submit quarterly reports to the county prosecutor summarizing the allegations received and the investigations concluded for that period. Each county prosecutor shall establish a schedule for the submission of the reports and specify the content of the reports.

- Each agency must annually release reports to the public summarizing the allegations received and the investigations concluded for that period. These reports shall not contain the identities of officers or complainants. In addition, each agency shall periodically release a brief synopsis of all complaints where a fine or suspension of 10 days or more was assessed to an agency member. The synopsis shall not contain the identities of the officers or complainants.

- Each agency shall ensure that officers assigned to the internal affairs function complete training as mandated by the Division of Criminal Justice.

The above represent critical performance standards that every county and municipal law enforcement agency must implement. Agencies that make a vigorous commitment to the internal affairs process signal their desire to comply with the highest standards of professionalism in law enforcement. They also ensure that their officers will be accountable for their actions to both the agency and the community. Agencies that fail to make such a commitment run the risk of failing to uncover policies, practices and procedures that may undermine legitimate efforts to provide the highest quality law enforcement services.

Indifference to the internal affairs function will have a negative impact on the administration of criminal justice and the delivery of police services to New Jersey's citizens. Agencies that fail to make the internal affairs function a priority can lose the respect and support of the community. The integrity of individual law enforcement agencies, and the reputation of the State's criminal justice system, can also suffer if agencies fail to identify and correct officer misconduct. In addition, law enforcement agencies that fail to implement a meaningful and objective internal affairs process may be found liable in civil lawsuits for their failure to effectively address officer misconduct. It is for these reasons that the Attorney General has issued this revised policy and directed that the State's law enforcement agencies implement the critical mandates set forth by the policy.

This revised policy, the procedures set forth in the policy and the legal citations contained in the text are primarily intended for implementation by county and municipal law enforcement agencies, including municipal and county police forces, county sheriff's offices, county prosecutor's offices and State police forces. Other law enforcement agencies should consult with their legal advisor before implementing specific provisions of the policy. Agencies not under the supervision of the Attorney General as set forth in the Criminal Justice Act of 1970 and/or whose primary mission does not include enforcing the criminal laws of this State (e.g., State and county juvenile justice agencies, State and county correctional agencies, county probation agencies, State parole agencies, interstate law enforcement agencies), are under no obligation to implement the provisions of this policy. Should these agencies choose to adopt the provisions of this policy for their own use, they do so cognizant that one or more of the provisions of this policy may be unsuitable for implementation by their agency and/or one or more of the legal citations contained in the policy may not apply to their agency. These agencies should consult with legal counsel before implementing one or more provisions of this policy.

7/2014

# Fundamentals of the Disciplinary Process

Achieving the desired level of discipline within the law enforcement agency is among the most important responsibilities of the law enforcement executive. Yet, this is one of the most frequently neglected processes within many law enforcement agencies. While the word "discipline" was originally defined as instruction, teaching or training, its meaning has shifted toward a concept of control through punishment. This emphasis on control has resulted in discipline being viewed as a negative threat rather than a mechanism for remediation and improvement. Too frequently rules of conduct and disciplinary procedures are used as an end in themselves, and their purpose in reaching department goals is forgotten. Focusing on the negative aspects of discipline diminishes officer morale and productivity.

The first step toward positive discipline is to emphasize instruction and de-emphasize control. This requires the law enforcement executive to focus on organizational practices. The executive must first define the goals and objectives of the agency's units and then announce management's expectations to guide the units toward realizing those goals. The law enforcement executive must establish a means to monitor performance and to correct improper actions.

This approach to management as it relates to discipline insures that all subordinates know and understand what must be done, why it must be done, how it must be done and when it must be done. Employees must be clearly told what constitutes satisfactory performance through performance evaluations and similar procedures. *N.J.A.C.* 4A:6-5.1. Supervisors and managers also must know when and how to take corrective action. To achieve this, management must establish workable procedures for documenting all expectations and advising individuals of their duties and responsibilities.

## Policy Management System

The agency's policy management system serves as the foundation for effective discipline. A clearly defined policy management system is designed to move the organization toward its stated goals and set the standard for acceptable performance. The system must incorporate a mechanism for distributing rules, regulations, policies and procedures, and provide for periodic review and revision as necessary. The system should include a classification and numbering mechanism that facilitates cross-referencing where necessary.

Law enforcement agencies should have a policy management system that, at a minimum, includes:

1.  Rules and regulations: Principles of behavior that set forth acceptable and unacceptable conduct. <u>In municipal police departments, the rules and regulations must be issued by the appropriate authority as designated by ordinance,</u>[1]

---

[1] *N.J.S.A.* 40A:14-118.

2.   Standard operating procedures (S.O.P.): Written statements providing specific direction for performing agency activities. Each S.O.P. should also include the department's policy in that area, which is a statement of agency principles that provides the basis for the development of the procedures.

3.   Directives or orders: Documents detailing the performance of a specific activity or method of operation.

The policy management system should clearly and explicitly state management's intentions. Employees must understand what management wants to accomplish and what behavior is expected. Each category of documents in the policy management system should be issued in a distinctive, readily identifiable format.

## Rules and Regulations

The agency's rules and regulations should form a "code of conduct" for employees. It should contain the broadly stated "do's and don'ts," without delving into specific details. For instance, an agency's rules and regulations should state that any use of force by an officer must comply with state and federal law, the Attorney General's and the county prosecutor's policies, and the agency's S.O.Ps. The specific details of what is considered force, and what constitutes the acceptable use of force, should be found in the agency's use of force S.O.P.

The rules and regulations should identify general categories of misconduct or inappropriate behavior that are subject to disciplinary action. An incident of misconduct or inappropriate behavior may fall into one or more of the following categories:

Crime: Complaint regarding the commission of an illegal act that constitutes a violation of the criminal code including disorderly and petty disorderly persons offenses.

Excessive force: Complaint regarding the use or threatened use of excessive force against a person.

Improper arrest: Complaint that the restraint of a person's liberty was improper, unjust, or violated the person's civil rights.

Improper entry: Complaint that entry into a building or onto property was improper or that excessive force was used against property to gain entry.

Improper search: Complaint that the search of a person or property was improper, unjust, violated established agency procedures or violated the person's civil rights.

Differential treatment: Complaint that the taking of police action, the failure to take police action or method of police action was predicated upon irrelevant factors such as race, appearance, age or sex.

Demeanor: Complaint that a department member's bearing, gestures, language or other actions were inappropriate.

7/2014

**Serious rule Infractions**:  Complaint for conduct such as insubordination, drunkenness on duty, sleeping on duty, neglect of duty, false statements or malingering.

**Minor rule Infractions**:  Complaint for conduct such as untidiness, tardiness, faulty driving, or failure to follow procedures.

In addition, the rules and regulations should set forth a schedule of possible penalties an officer might receive when discipline is imposed.  The rules and regulations may incorporate a system of progressive discipline.  Progressive discipline serves an important role in the process by which the agency deals with complaints of misconduct or inappropriate behavior.  In lieu of discipline, counseling, re-training, enhanced supervision, oral reprimand and performance notices can be used as instructional or remedial devices to address deficiencies or inadequate performance.

In providing a range of penalties, the department can use the disciplinary process to achieve the basic goals of instruction and address inappropriate behavior before minor problems escalate into major problems.  At the same time, the subject officer is made aware that repeated violations of the agency's rules will result in progressive discipline.  An internal affairs complaint that has a disposition of exonerated, unfounded or not sustained should not be used to effect progressive discipline.

A system of progressive discipline can include the following elements:

1. Oral reprimand or performance notice
2. Written reprimand
3. . Monetary fine[2]
4. Suspension without pay
5. Loss of a promotional opportunity
6. Demotion
7. Discharge from employment

The disciplinary process should be thoroughly explained in the agency's rules and regulations, including a description of the officer's rights, the identity of the hearing officer, an outline of the hearing process and, if applicable, appeal procedures available to the officers.

An agency's rules and regulations, which include the description of the disciplinary process, shall be distributed to all employees.  The agency should document that this distribution has taken place.  In addition, a copy of the rules and regulations and a copy of the department's internal affairs S.O.P. shall be made available to a representative of any employee collective bargaining unit.

---

[2] Agencies operating under Civil Service Commission statutes (*N.J.S.A.* 11A:2-20) and regulations may only assess a fine in lieu of a suspension where loss of the officer from duty would be "detrimental to the public health, safety or welfare" or if the assessment is restitution or is agreed to by the employee.

## Prevention of Misconduct

Prevention is the primary means of reducing and controlling inappropriate behavior and misconduct. Although disciplinary actions are properly imposed on officers who engage in wrongdoing, they have limited utility if they shield or obscure organizational conditions that permit the abuses to occur. Inadequate training and a lack of appropriate guidance too often are factors that contribute to inappropriate behavior and misconduct. An agency should make every effort to eliminate the organizational conditions that may foster, permit or encourage an employee's inappropriate behavior. In the furtherance of this objective, special emphasis should be placed on the following areas.

### Recruitment and Selection

Selecting and appointing the highest quality individuals to serve as law enforcement officers must be a priority of every law enforcement agency. During the selection process, written tests, psychological tests, background investigations and individual interviews should be completed by each candidate in an attempt to identify those who would be best suited for law enforcement employment. These procedures may also be used for promotional testing, and assignment to especially sensitive responsibilities or those that pose the greatest opportunities for abuse or wrongdoing. Each agency should establish policies and procedures for recruitment, oral and written examinations, selection and the promotional process.

### Training

Basic and in-service training for law enforcement officers should emphasize the sworn obligation of those officers to uphold the law and provide for the public safety of the citizenry. Police ethics should be a major component in the training curricula. In addition, the rules, regulations, policies and procedures of the agency, including the disciplinary process, should be stressed. There must also be a process to advise veteran officers of any new statutory requirements or significant procedural changes.

An agency's supervisory personnel should always consider the need for training when officers engage in inappropriate behavior or misconduct. The question should be, "Could training have prevented this behavior and can training prevent it from happening in the future?" Perhaps a particular officer or group of officers needs a refresher course in a certain subject. In addition, changes in the law, the agency or even within the community may trigger the need for a type of training never before given to the officer or department.

Training in this sense can be anything from informal counseling of an officer about a particular policy or procedure to formal department-wide training. The department may also take advantage of training offered by other agencies, including police academies, the county prosecutors, the Division of Criminal Justice, other public or private entities or web-based programs.

### Supervision

Proper supervision is critical to the discipline and management of a law enforcement agency. To maximize their effectiveness, agency supervisors should receive appropriate supervisory training as close as possible to the time of their promotion. Emphasis should be placed on anticipating problems among officers before they result in improper performance or

conduct. Supervisors are expected to recognize potentially troublesome officers, identify training needs of officers and provide professional support in a fair and consistent manner.

**Staff Inspections**

While the primary responsibility for enforcing department policies rests with the line supervisors, management cannot rely solely on those supervisors for detecting violations. Administrators should establish a mechanism to determine whether an agency's policies and procedures are being properly implemented. It is necessary for management to know if behavior is, in fact, consistent with the agency's rules and regulations, policies and procedures. The task of detecting such defects should be delegated to an inspection unit or function.

Large agencies might establish an inspection unit operating directly out of the office of the law enforcement executive. Small and medium size agencies can successfully accomplish this function by periodically assigning the inspection task to selected unit supervisors. Individuals so assigned must be of unquestioned integrity and hold sufficient rank to achieve the objectives of the inspection function.

The inspection function should determine by actual on-site inspection whether personnel are properly implementing management's policies at the operational level. This function is also responsible for reviewing and evaluating procedures. In addition, the inspection unit or function should evaluate the material resources of the department and the utilization of those resources. This includes, but is not limited to, motor vehicles, communications equipment, computers, office machinery and supplies. The inspection function or unit should report any deficiencies to the law enforcement executive, and recommend any possible solutions and improvements.

**Community Outreach**

Commanding officers should strive to remain informed about and sensitive to the community's needs and problems. Regularly scheduled meetings to discuss community concerns should be held with citizen advisory councils, religious groups, schools, businesses and other community leaders. These meetings help commanding officers identify potential crisis situations and keep channels of communication open between the agency and the community. The disciplinary process should be publicized and clearly explained in these forums.

# Responsibility for Discipline

The successful implementation of discipline requires the law enforcement executive to delegate responsibility for the disciplinary process to individual units and supervisors within the agency, and perhaps to Human Resources. Although the levels of authority may vary within an agency's chain of command, the failure to carry out disciplinary responsibilities at any level in that chain will contribute to the organization's ineffectiveness. The task of clearly delineating the authority and responsibility to initiate and impose discipline is essential to the agency's administration.

Every supervisor must establish a familiarity with the agency's disciplinary process and develop an understanding of how to implement specific disciplinary procedures when called upon to deal with inappropriate behavior or misconduct. If a supervisor fails to follow these procedures or avoids his or her responsibility, that supervisor is not conforming to expected behavior and must receive some sort of corrective action. Some supervisors occasionally need to be reminded that the fundamental responsibility for direction and control rests with the immediate supervisor at the operational level, not with the law enforcement executive.

To provide such direction and control, supervisory personnel must be granted the proper authority to carry out their responsibilities. To properly exercise this authority, supervisory personnel must be fully familiar with applicable agency rules and regulations. Based on the size and needs of the individual agency, supervisory personnel may be permitted to impose specific disciplinary measures (subject to approval of the law enforcement executive) including oral reprimands or performance notices, written reprimands and suspensions. In addition, the supervisor should be permitted to make written recommendations for other disciplinary actions. The extent of this authority must be clearly stated in the agency's disciplinary rules and regulations.

## Fitness for Duty

One of the areas that often involves internal affairs is an employee's fitness for duty. This is not exclusively an internal affairs issue; an officer's fitness may be impacted for reasons other than misconduct. For instance, an officer may become unfit for duty because of a medical problem unrelated to the job. There are occasions, however, when internal affairs may be called upon to assist in determining whether or not an officer is fit for duty.

It is incumbent upon a law enforcement agency to ensure that its members are fit to safely and effectively perform the duties of their profession. If, for whatever reason, an officer's fitness for duty is questioned, the agency must have the officer evaluated by competent professionals to answer that question. If a law enforcement executive, commander, supervisor or internal affairs investigator has reasonable concerns about an officer's fitness for duty, they are obligated to begin the process necessary to obtain that evaluation. If the officer in question is obviously unfit for duty, the officer in authority may effect an immediate suspension pending the outcome of the evaluation and investigation. See "Immediate Suspension Pending Investigation and Disposition" on p. 16.

# Internal Affairs Unit

**Requirement 1**

> Every law enforcement agency must establish, by written policy, an internal affairs function or unit within the agency.

Every law enforcement agency shall establish an internal affairs unit or function. Depending upon the need, the internal affairs unit can be full- or part-time.  In either case, this requires the establishment of a unit or the clear allocation of responsibility and resources for executing the internal affairs function.  The unit will consist of department personnel assigned to internal affairs by the law enforcement executive.  Personnel assigned to the internal affairs unit serve at the pleasure of and are directly responsible to the law enforcement executive or the designated internal affairs supervisor.

## Duties and Responsibilities

The purpose of the internal affairs unit is to establish a mechanism for the receipt, investigation and resolution of officer misconduct complaints.  The goal of internal affairs is to ensure that the integrity of the department is maintained through a system of internal discipline where an objective and impartial investigation and review assure fairness and justice.

The internal affairs unit or officer will investigate alleged misconduct by members of the department and review the adjudication of minor complaints handled by supervisors.  In addition, internal affairs shall be notified of and document all firearms discharges by department personnel that are not related to training, all use of force incidents that result in injury to a defendant or a third party, all vehicular pursuits undertaken by department personnel and all collisions involving department vehicles.  Once notification has been received, internal affairs will determine whether additional investigation is necessary.

An internal affairs unit has an obligation to investigate or review any allegation of employee misconduct that is a potential violation of the agency's rules and regulations or that indicates the employee is unable, unwilling or unfit to perform his or her duties.  The obligation to investigate includes not only acts of misconduct that are alleged to have occurred while the subject officer was on-duty, but also acts of misconduct that are alleged to have occurred outside the employing agency's jurisdiction or while the subject officer was off-duty.

An internal affairs unit may conduct an internal investigation on its own initiative or upon notice to or at the direction of the law enforcement executive or the internal affairs supervisor. Internal affairs may refer investigations to the employee's supervisor for action as permitted by department policy and procedures.

Internal affairs investigations must be considered as important to the agency as any criminal investigation.  Members of the internal affairs unit therefore should have the authority to interview any member of the agency and to review records and reports of the agency relative to their assignment.  In addition, the agency's personnel should be instructed that the internal affairs unit acts at the behest of the law enforcement executive in all internal affairs investigations.  The agency's personnel should be further instructed that during an internal affairs investigation, every member of the agency, regardless of rank, shall treat an order or a request from a member of the internal affairs unit as if the order or request came directly from the law enforcement executive.

7/2014

The internal affairs unit shall maintain a comprehensive central file on all complaints received, whether investigated by internal affairs or assigned to the officer's supervisors for investigation and disposition. In addition, internal affairs should establish protocols for tracking all complaints received by the agency and the conduct of all officers. The protocols must include criteria for evaluating the number of complaints received by the agency and the number of complaints filed against individual officers.

## Selection of Personnel for the Internal Affairs Unit

Personnel assigned to conduct internal affairs investigations should be energetic, resourceful and committed to the agency's mission and the internal affairs function. They must display a high degree of perseverance and initiative. The internal affairs investigator must maintain an appropriate balance between professional commitment and personal and group loyalties. Internal affairs personnel must be of unquestioned integrity and possess the moral stamina to perform unpopular tasks. It is important that these investigators possess the ability to withstand the rigors and tensions associated with complex investigations, social pressures and long hours of work. The investigator must possess the ability to be tactful when dealing with members of the department and the community. It is recommended that personnel assigned to the internal affairs unit provide the agency with the opportunity to access all segments of the community. For example, if a particular community has a significant proportion of the population that speaks a foreign language, the law enforcement executive may wish to consider assigning an officer to the internal affairs unit who speaks that language.

Investigations of officer misconduct may proceed in one of two ways. An investigation may be conducted for the purpose of imposing a disciplinary sanction or initiating a criminal prosecution. The distinction between the two is important because each type of investigation has differing legal requirements. Consequently, it is important that the internal affairs investigator be familiar with proper investigative techniques and legal standards for each type of proceeding. It is essential that experienced investigators be assigned to internal affairs investigations. Each investigator must be skilled in interviews and interrogation, observation, surveillance and report writing.

Internal affairs investigators should be trained not only in the elements of criminal law, court procedures, rules of evidence and use of technical equipment, but also in the disciplinary and administrative law process. Initially upon assignment, and on an ongoing basis, these investigators should receive training in internal affairs and disciplinary procedures, including training required by the Division of Criminal Justice.

Law enforcement executives shall not assign to the internal affairs unit any person responsible for representing members of a collective bargaining unit. The conflict of interest arising from such an assignment would be detrimental to the internal affairs unit, the subject officer, the person so assigned, the bargaining unit and the department as a whole.

# Accepting Reports of Officer Misconduct

**Requirement 2**

> Every law enforcement agency must accept reports of officer misconduct from any person, including anonymous sources, at any time.

Every law enforcement agency shall establish a policy providing that all citizen complaints are readily accepted and fully and promptly investigated. Allegations of officer misconduct or complaints of inappropriate behavior can alert the law enforcement executive to problems that require disciplinary action or identify the need for remedial training. However, executives must also recognize that complaints from the public provide them with an invaluable source of feedback. Such complaints, whether substantiated or not, increase the executive's awareness of both actual or potential problems and the community's perceptions and attitudes about police practices and procedures. The executive should use complaints from the public as one means of determining whether the agency is falling short of its intended goals.

## Accepting Reports Alleging Officer Misconduct

All complaints of officer misconduct shall be accepted from all persons who wish to file a complaint, regardless of the hour or day of the week. This includes reports from anonymous sources, juveniles and persons under arrest or in custody. Internal affairs personnel, if available, should accept complaints. If internal affairs personnel are not available, supervisory personnel should accept reports of officer misconduct, and if no supervisory personnel are available, complaints should be accepted by any law enforcement officer. At no time should a complainant be told to return at a later time to file his or her report.

Citizens should be encouraged to submit their complaints as soon after the incident as possible. If the citizen cannot personally appear at the agency to file the complaint, a member of the agency, preferably a member of the internal affairs unit, should visit the citizen at his or her home, place of business or other location if necessary to complete the report. Under no circumstances shall it be necessary for a citizen to make a sworn statement to initiate the internal affairs process. Furthermore, every police agency shall accept and investigate anonymous complaints.

The internal affairs investigator, supervisor or other officer receiving the complaint will explain the department's disciplinary procedures to the person making the complaint. The officer should advise the complainant that he or she will be kept informed of the status of the complaint and its ultimate disposition. To best accomplish this, the department shall prepare a fact sheet or brochure that includes information on the agency's internal affairs process and what role the complainant can expect to play. If feasible, the fact sheet or brochure should be provided to the complainant at the time the complaint is made. A sample fact sheet is found in Appendix B.

The supervisor or other officer receiving the complaint shall complete the appropriate internal affairs report form. The report form should have adequate instructions for proper completion.

Upon receipt of an internal affairs complaint, the internal affairs investigator can advise the complainant of the importance of providing accurate and truthful information. However, when making such an advisement, internal affairs investigators must remember that it is important to balance the need for receiving citizen complaints of officer misconduct against the danger of discouraging citizens from coming forward with their complaints. Therefore, any language that would serve to dissuade or intimidate a citizen from coming forward should be avoided. Nonetheless, citizens may be advised of the consequences of filing a false report.

Although there are complaints against officers that are legitimate and based upon facts, others are contrived and maliciously pursued, often with the intent to mitigate or neutralize the officer's legal action taken against the complainant. The law enforcement agency must fully and impartially investigate the former, while taking a strong stand to minimize the latter. The law enforcement agency should notify the county prosecutor in any case where a complainant has fabricated or intentionally misrepresented material facts to initiate a complaint of officer misconduct.

Anonymous reports of improper conduct by an officer shall be accepted. All efforts will be made to encourage full cooperation by the complainant. The investigation of anonymous complaints can be troublesome. However, accurate information about officer wrongdoing may be provided by someone who, for any number of reasons, does not want to be identified. Therefore, an anonymous report must be accepted and investigated as fully as possible. In the event an agency receives an anonymous complaint, the officer accepting it should complete as much of the internal affairs report form as he or she can given the information received.

Complaints against a law enforcement executive may originate from a member of the public or from an employee of the agency. All such complaints shall be documented and referred to the county prosecutor for investigation.

Complaints may also be received from other law enforcement agencies, such as neighboring municipal police agencies, the county prosecutors, the Division of Criminal Justice or federal law enforcement agencies. Those complaints should be forwarded to internal affairs for immediate investigation.

If a person comes to a particular law enforcement agency to make a complaint about a member of another law enforcement agency, he or she should be referred to that agency. If the complainant expresses fear or concerns about making the complaint directly, he should be referred to the county prosecutor.

All complaints should be investigated if the complaint contains sufficient factual information to warrant an investigation. In cases where the officer's identity is unknown, the internal affairs investigator should use all available means to determine proper identification. Where civil litigation has been filed and the complainant is a party to or a principal witness in the litigation, the internal affairs investigator shall consult with legal counsel to determine whether an investigation is appropriate or warranted.

7/2014

In some cases, a complaint is based on a misunderstanding of accepted law enforcement practices or the officer's duties. Supervisors should be authorized to informally resolve minor complaints, whenever possible, at the time the report is made. If the complainant is not satisfied with such a resolution, the complaint should be forwarded to internal affairs for further action as warranted. The process of informally resolving internal affairs complaints requires the exercise of discretion by supervisors. The proper exercise of discretion in such matters cannot be codified.

Even if the citizen is satisfied with the informal resolution, the process should be recorded on an internal affairs report form. Regardless of the means of resolution, the integrity of the internal affairs process, particularly the receipt of citizen complaints, demands that all citizen complaints and inquiries be uniformly documented for future reference and tracking. The form should indicate that the matter was resolved to the satisfaction of the citizen and sent to internal affairs for review and filing. The internal affairs supervisor should periodically audit those reports indicating that a citizen's complaint was informally resolved to ensure that the agency's supervisors are properly implementing their authority to resolve citizen complaints.

**Requirement 3**

> The agency must notify an officer in writing that a complaint has been made against him and that an investigation will begin, unless this notification would interfere with the investigation.

Once a complaint has been received, the subject officer shall be notified in writing that a report has been made and that an investigation will commence. This notification is not necessary if it would impede the investigation. An example of a notification form is found in Appendix F.

## Immediate Suspension Pending Investigation and Disposition

In certain serious cases of officer misconduct, the agency may need to suspend the subject officer pending the outcome of the investigation and subsequent administrative or criminal charges. To effect an immediate suspension pending the investigation, at least one of the following conditions must be met:

1. The employee is unfit for duty.
2. The employee is a hazard to any person if permitted to remain on the job.
3. An immediate suspension is necessary to maintain safety, health, order or effective direction of public services.
4. The employee has been formally charged with a first, second or third degree crime.
5. The employee has been formally charged with a first, second, third or fourth degree crime or a disorderly persons offense committed while on duty, or the act touches upon his or her employment.

Before the immediate suspension of an officer, the law enforcement executive or authorized person should determine which of those criteria apply. The decision whether or not to continue to pay an officer who has been suspended pending the outcome of the investigation rests with the law enforcement executive and appropriate authority, who should carefully consider all ramifications of these choices.

It should be clear that the suspension of an officer before completing an investigation or disposing of a case is a serious matter. Such suspensions may be immediately necessary, as in the case of an officer reporting for work under the influence of alcohol. In other cases, however, a suspension need not be immediate but rather would follow a preliminary investigation into the matter that indicates that one of the above criteria has been met. In any case, suspension prior to disposing of the case must be clearly documented and justified. At the time of the suspension, the individual shall be provided with a written statement of the reasons the action has been taken. In the event of a refusal by the individual to accept that written statement, a copy shall be provided to the individual's collective bargaining representative as soon as possible. If a supervisor or commander authorized to do so imposes an immediate suspension, the law enforcement executive must be advised without delay. He or she will then determine the status of the suspension given the facts of the case in light of the above criteria. In no case shall an immediate suspension be used as a punitive measure.

# Investigation of Internal Complaints

## Requirement 4

All allegations of officer misconduct shall be thoroughly and objectively investigated to their logical conclusion.

## Time Limitations

Under *N.J.S.A.* 40A:14-147, disciplinary charges alleging a violation of the agency's rules and regulations must be filed within 45 days of the date the person filing the charge obtained sufficient information to do so. This "45 day rule" does not apply to disciplinary charges alleging officer misconduct or incapacity. In addition, citizens are not required to make their complaint within 45 days of the incident. But once the agency has received the citizen's complaint, the 45 day rule applies.

Commencing a criminal investigation into the subject matter of an internal affairs complaint will suspend the 45 day rule pending the disposition of that investigation; such suspension remains until the disposition of the criminal investigation. Upon disposition of the criminal investigation, agencies will once again be bound by the 45 day rule. Therefore, in the event a county prosecutor has initiated a criminal investigation of an internal affairs matter, the internal affairs unit must remain in contact with the county prosecutor on a regular basis to determine the investigation's progress. Where a county prosecutor has decided to terminate a criminal investigation and return the matter to the agency for appropriate disciplinary action, the internal affairs investigator must be able to document the date on which the county prosecutor disposed of the criminal investigation.

Where an agency can conduct an internal affairs investigation and file disciplinary charges within 45 days of the receipt of a complaint, the 45 day rule does not become an issue. However, if an agency cannot do so, the burden is on the investigator and ultimately the agency to identify the point at which "sufficient information" was developed to initiate disciplinary action. Therefore, it is important that a detailed chronology be maintained of each investigation so that critical actions and decisions are documented.

Along these same lines, it is important that there is no delay between the conclusion of the investigation by the assigned investigator and the decision to file charges by the person who has that responsibility. Although the 45 day clock begins at the time the person who has the responsibility to file charges has sufficient information, an agency would have a difficult time justifying an extensive bureaucratic delay once *any* member of that agency has established sufficient information. The need to eliminate bureaucratic delay is one of the reasons that the internal affairs unit should be closely aligned with the office of the law enforcement executive in the agency's organizational structure.

In addition, all agencies must comply with the time limitations established by *N.J.S.A.* 40A:14-200 *et seq.* regarding the imposition of discipline. Lastly, agencies operating under the purview of Title 11A must comply with the deadlines for disciplinary action imposed by Civil Service Commission Rules.[3]

---

[3] *N.J.A.C.* 4A:1-1.1 *et seq.*

## Investigation and Adjudication of Minor Complaints

Following the principle that the primary goal of internal affairs and discipline is to correct problems and improve performance, management in the subject officer's chain of command should handle relatively minor complaints. Complaints of demeanor and minor rule infractions should be forwarded to the supervisor of the subject officer's unit because it is often difficult for an immediate supervisor to objectively investigate a subordinate. In addition, that arrangement might obscure the possibility that part of the inappropriate conduct was the result of poor supervision. While the structure of each law enforcement agency is different, it is recommended that minor complaints be assigned to and handled by a commanding officer at least one step removed from the officer's immediate supervisor. Often Human Resources may need to be notified and involved.

Supervisors investigating minor complaints of inappropriate behavior must strive to conduct a thorough and objective investigation without violating the rights of the subject officer or any other law enforcement officer. Accordingly, all officers who may be called upon to do an internal investigation must be thoroughly familiar with the department's entire internal affairs policy, including the protection of the subject officer's rights and the procedures for properly investigating internal complaints.

The investigator should interview the complainant, all witnesses and the subject officer, and review relevant reports and documents, gather evidence and conduct any other investigation as appropriate. The investigator should then submit a report to the law enforcement executive or appropriate supervisor summarizing the matter and indicating the appropriate disposition. Possible dispositions include:

1. Exonerated: The alleged incident did occur, but the actions of the officer were justified, legal and proper.

2. Sustained: The investigation disclosed sufficient evidence to prove the allegation and the actions of the officer violated a provision of the agency's rules and regulations or procedures.

3. Not Sustained: The investigation failed to disclose sufficient evidence to clearly prove or disprove the allegation.

4. Unfounded: The alleged incident did not occur.

If the investigator determines that the complaint is unfounded, exonerated or not sustained, the investigative report is to be forwarded to internal affairs for review and entry in the index file and filing. The subject officer shall be notified in writing of the investigation's outcome.

If the complaint is sustained, the superior officer so authorized should determine the appropriate disciplinary action. Typical disciplinary actions for minor infractions include performance notices, oral reprimands or written reprimands. The superior officer shall complete the appropriate disciplinary document and provide a copy of that document to the officer being disciplined. A copy of the disciplinary document shall be forwarded to the law enforcement executive or appropriate supervisor for review, placed in the officer's personnel file and sent to internal affairs for entry into the index file and filing.

Each agency should establish its own protocol for reviewing and purging performance notices and oral reprimands from an employee's personnel file. Written reprimands should remain permanently in the employee's personnel file.

**Requirement 5**

The agency must notify officers of complaints and their outcomes and must notify complainants of the outcome of the investigation.

A letter should be sent to the complainant explaining the outcome of the investigation. If the allegation was unfounded or the officer was exonerated, this conclusion should be stated and defined for the civilian complainant. If the allegation was not sustained, the letter should provide the complainant with a brief explanation why the complaint was not sustained (*e.g.*, insufficient proof, lack of witnesses, etc.). If the allegation was sustained and discipline was imposed, the letter should simply state that the allegation was sustained and that the officer has been disciplined according to department procedures. It is not necessary to specify the discipline imposed. Sample letters are in Appendix K.

## Investigation and Adjudication of Serious Complaints

**Requirement 6**

Where preliminary investigation indicates the possibility of a criminal act on the part of the subject officer or the investigation involves the use of force by the officer which results in serious bodily injury or death, the county prosecutor must be notified immediately. In either case, no further action should be taken, including the filing of charges against the officer, until directed by the county prosecutor.

All serious complaints shall be forwarded to the internal affairs unit. This includes complaints of criminal activity, excessive force, improper or unjust arrest, improper entry, improper or unjustified search, differential treatment, serious rule infractions and repeated minor rule infractions.

Unless otherwise directed to do so by the county prosecutor, the prosecutor's office must be immediately notified of all allegations of criminal conduct. The internal affairs investigator shall refrain from taking any further investigative action until directed to do so by the county prosecutor unless an imminent threat exists to the safety or welfare of an individual. Once a complaint has been forwarded to the prosecutor's office, that office shall endeavor to review the allegation within 30 days and advise the law enforcement agency whether a criminal investigation will be conducted. In the event the prosecutor's office cannot reach a decision within the initial 30 day period, the deadline may be extended in 30 day increments at the discretion of the county prosecutor. The law enforcement agency shall be advised of any extensions of the deadline.

If a criminal investigation is initiated, the law enforcement agency shall receive periodic and timely updates concerning the course of the investigation. While a criminal investigation is pending, complainants and witnesses may be referred by the law enforcement agency to the county victim witness office for information concerning the criminal investigation. Once the criminal investigation is complete and a disposition of the allegation has been made, the prosecutor's office shall provide the law enforcement agency with its investigative file for use in the internal affairs investigation subject to applicable State statutes, court rules and case law. If the prosecutor's office declines to initiate a criminal investigation or the investigation is administratively closed, the law enforcement agency shall be advised of the outcome in writing.

As for administrative complaints, the internal affairs supervisor or law enforcement executive will direct that an internal affairs investigator conduct an appropriate investigation. Investigators must strive to conduct a thorough and objective investigation without violating the rights of the subject officer or any other law enforcement officer. Internal affairs investigators, and anyone who may be called upon to do an internal investigation, must be thoroughly familiar with the department's entire internal affairs policy, including the protection of the subject officer's rights and the procedures for properly investigating internal complaints.

Internal affairs shall notify the suspect officer in writing that an internal investigation has been started, unless the nature of the investigation requires secrecy. The internal affairs investigator should interview the complainant, all witnesses and the subject officer, review relevant reports and documents, and obtain necessary information and materials.

An administrative investigation may commence with the disposition of a complaint against the subject officer by the Superior Court or a municipal court. In the alternative, an administrative investigation may commence with a county or municipal prosecutor's decision to dismiss a complaint against a subject officer. A finding of guilt by the Superior Court or a municipal court may assist in resolving an administrative investigation because such a finding requires proof beyond a reasonable doubt, which is more than is required to meet the burden of proof in administrative matters.

In the alternative, a disposition that does not involve a finding of guilt by the courts or where a complaint is dismissed by a county or municipal prosecutor means that proof beyond a reasonable doubt is absent. However, it does not mean that an administrative investigation cannot be pursued or must be closed. The absence of proof beyond a reasonable doubt does not foreclose the possibility that an investigation may reveal evidence that meets the burden of proof in administrative matters. Thus, the internal affairs investigator must continue the administrative investigation to determine whether evidence can be developed that meets the "preponderance of the evidence" burden of proof for administrative proceedings.

Upon completing the investigation, the internal affairs investigator will recommend dispositions for each allegation through the chain of command to the law enforcement executive. As previously described, these dispositions may include exonerated, sustained, not sustained or unfounded. Each level of review may provide written recommendations and include comment for consideration by the law enforcement executive.

The law enforcement executive, upon reviewing the report, supporting documentation and information gathered during any supplemental investigation, shall direct whatever action is deemed appropriate. If the complaint is unfounded or not sustained or the subject officer is exonerated, the disposition shall be entered in the index file and the report filed.

7/2014

If the complaint is sustained and it is determined that formal charges should be made, the law enforcement executive will direct either internal affairs or the appropriate commanding officer to prepare, sign and serve charges upon the subject officer or employee. The individual assigned shall prepare the formal notice of charges and hearing on the charging form. This form will also be served upon the officer charged in accordance with *N.J.S.A.* 40A:14-147. An example of a charging form is in Appendix N.

The notice of charges and hearing shall direct that the subject officer may:  1) enter a plea of guilty to the charges; 2) enter a plea of not guilty to the charges; or 3) waive his or her right to a hearing. If the officer enters a plea of guilty or waives his or her right to a hearing, he or she is permitted to present mitigating factors prior to being assessed a penalty. Conclusions of fact and the penalty imposed will be noted in the officer's personnel file after he or she has been given an opportunity to read and sign it. Internal affairs will cause the penalty to be carried out and complete all required forms.

If the subject officer enters a plea of not guilty and requests a hearing, the law enforcement executive will set the date for the hearing as provided by statute and arrange for the hearing of the charges. Internal affairs may assist the assigned supervisor or prosecutor in preparing the department's prosecution of the charges. This includes proper notification of all witnesses and preparing all documentary and physical evidence for presentation at the hearing.

The hearing shall be held before the designated hearing officer. The hearing officer shall recommend a disposition of the charges, including modifying the charges in any manner deemed appropriate. The decision of the hearing officer must be in writing and should be accompanied by findings of fact for each issue in the case.

If the hearing officer finds that the complaint against the officer is sustained by a preponderance of the evidence, he or she should recommend any of the penalties which he or she deems appropriate under the circumstances and within the limitations of State statutes and the department's disciplinary system.

A copy of the decision and accompanying findings and conclusions shall be delivered to the officer or employee who was the subject of the hearing and to the law enforcement executive (if he or she was not the hearing officer) for the imposition of discipline. Upon completion of the hearing, internal affairs will complete all required forms (Civil Service Commission jurisdictions use the Final Notice of Disciplinary Action form DPF-31C), including the entry of the disposition in the index file. If the charges were sustained, internal affairs will cause the penalty to be carried out. Documentation of the charge and the discipline shall be permanently placed in the officer's or employee's personnel file.

Upon final disposition of the complaint, in cases where the officer was not notified of the outcome through some written form of discipline, the officer shall be notified of the outcome of the case through a written internal department communication.

In all cases, a letter should be sent to the complainant explaining the outcome of the investigation. If the allegation was unfounded or the officer was exonerated, this conclusion should be stated and defined for the civilian complainant. If the allegation was not sustained, the letter should provide the complainant with a brief explanation why the complaint was not sustained (*e.g.*, insufficient proof, lack of witnesses, etc.). If the allegation was sustained and discipline was imposed, the letter should simply state that the allegation was sustained and that the officer has been disciplined according to department procedures. It is not necessary to specify the discipline imposed.

7/2014

# Domestic Violence Incidents Involving Agency Personnel

Law enforcement personnel may become involved in domestic violence incidents. It is important to the integrity of the agency, the safety of the victim and the career of the officer that such matters are handled appropriately. Thus, it is imperative that every law enforcement agency establish a policy for investigating and resolving domestic violence complaints involving its employees. A sample policy is in Appendix Q.

Whenever an officer is involved in a domestic violence incident, either as an alleged perpetrator or as a victim, internal affairs must be promptly notified. Where the officer was the alleged perpetrator, investigating officers must seize his or her service weapon or any other weapon possessed, as mandated by Attorney General Directives 2000-3 and 2000-4. The directives are in Appendix R.

Every law enforcement agency should promulgate a rule which requires any officer or employee to notify the agency if he or she has been charged with an offense, received a motor vehicle summons or been involved in a domestic violence incident. In cases of domestic violence, the investigating agency should also notify the employing agency's internal affairs investigators as soon as possible.

The primary responsibility for investigating the domestic violence incident itself, along with any related offenses, belongs to the agency with jurisdiction over the incident. The processing of domestic violence complaints, restraining orders, criminal complaints, etc., will remain with that agency. In many cases, this will not be the officer's employing agency.

The employing agency's internal affairs officers will be responsible for receiving the information and documenting the matter as they would any other misconduct allegation. If the report is that the officer is the victim of domestic violence, it should still be recorded and followed up in case employee assistance is warranted.

If a criminal charge has been filed, internal affairs must notify the county prosecutor immediately even if the incident took place in another county. As the chief law enforcement officer of the county, it is critical that a prosecutor be made aware of any outstanding criminal charges against any law enforcement officer in his or her county.

Internal affairs is responsible for reviewing the incident's investigation and conducting whatever further investigation is necessary to determine if the officer violated department rules and regulations or if the officer's fitness for duty is in question. In addition, internal affairs will track the proceedings of any criminal charges or civil matters that may arise out of the incident. Internal affairs will also work with the Division of Criminal Justice or the county prosecutor to determine if and when an officer may have his or her weapon(s) returned.

# Internal Affairs Investigation Procedures

Only after a thorough and impartial investigation can an informed decision be made as to a complaint's proper disposition. Decisions based upon such an investigation will support the credibility of the department both among its ranks and the public at large.

As with all other investigations, lawful procedures must be used to gather all evidence pertaining to allegations against a law enforcement officer. Investigations for internal disciplinary or administrative purposes involve fewer legal restrictions than criminal investigations. Restrictions that do exist, however, must be recognized and followed. Failure to do so may result in improperly gathered evidence being deemed inadmissible in court. Restrictions that apply to internal affairs investigations may have their basis in State statutes, case law, collective bargaining agreements, local ordinances, Civil Service Commission rules or agency rules and regulations. Internal affairs investigators shall familiarize themselves with all of these provisions.

Complaints must be professionally, objectively and expeditiously investigated in order to gather all information necessary to arrive at a proper disposition. It is important to document citizens' concerns, even those that appear to be unfounded or frivolous. If such complaints are not documented or handled appropriately, citizen dissatisfaction will grow, fostering a general impression of agency insensitivity to community concerns.

The internal affairs investigator may use any lawful investigative techniques including inspecting public records, questioning witnesses, interviewing the subject officer, questioning agency employees and surveillance. The investigator therefore must understand the use and limitations of such techniques.

It is generally recommended that the complainant and other lay witnesses be interviewed prior to interviewing sworn members of the agency. This will often eliminate the need to do repeated interviews with agency members. However, this procedure does not have to be strictly adhered to if circumstances and the nature of the investigation dictate otherwise.

## Interviewing the Complainant and Civilian Witnesses

The investigator assigned an internal investigations case should initially outline the case to determine the best investigative approach and identify those interviews immediately necessary. The investigator should determine if any pending court action or ongoing criminal investigation might delay or impact upon the case at hand. If it appears that the conduct under investigation may have violated the law or the investigation involves the officer's use of force that resulted in serious bodily injury or death, the county prosecutor shall be immediately notified of the internal affairs investigation.

If the investigation involves a criminal charge against the complainant, an initial interview should be conducted with the complainant. However, the investigator must realize that the complainant is simultaneously a criminal defendant arising out of the same incident and must be accorded all of the appropriate protections. Thus, all further contact with the complainant should be arranged with and coordinated through the county prosecutor and the complainant's defense attorney.

The complainant should be personally interviewed if circumstances permit. If the complainant cannot travel to the investigator's office, the investigator should conduct the interview at the complainant's home or place of employment if feasible. If not, a telephonic interview may be conducted. All relevant identifying information concerning the complainant should be recorded, *e.g.*, name, complete address, telephone numbers and area codes, race or ethnic identity, sex, date of birth, place of employment, social security number if necessary and place of employment (name and address).

All relevant facts known to the complainant should be obtained during the interview. An effort should be made to obtain a formal statement from the complainant at the initial interview.

Whenever possible, all witnesses to the matter under investigation should be personally interviewed and formal statements taken.

## Reports, Records and Other Documents

All relevant reports should be obtained and preserved as expeditiously as possible. Internal department reports relating to a subject officer's duties should be examined. Examples of such reports include arrest and investigative reports, and radio, patrol, vehicle and evidence logs pertaining to or completed by the officer.

The investigator should also examine and retrieve all electronic, computer, digital and video records. These may include analog and digital records created by radio and telephone recorders, computer aided dispatch systems, mobile data terminals, in-car video systems, video surveillance systems and other forms of audio and video recording. In these cases, the relevant data should be copied to an appropriate medium as soon as possible and retained by internal affairs.

Records and documents of any other individual or entity that could prove helpful in the investigation should be examined. These may include reports from other law enforcement agencies, hospital records, doctors' reports, jail records, court transcripts, F.B.I. or S.B.I. records, motor vehicle abstracts and telephone and cellular phone records. In some instances, a search or communications data warrant or a subpoena may be necessary to obtain the information.

## Physical Evidence

Investigators should obtain all relevant physical evidence. All evidence, such as fingerprints, clothing, hair or fabric fibers, bodily fluids, stains and weapons should be handled according to established evidence procedures.

With respect to radio and telephone recordings, the original recording is the best evidence and should be secured at the investigation's outset. Transcripts or copies of the original recordings can be used as investigative leads. Entire tapes or transmissions should be reviewed to reveal the totality of the circumstances.

## Photographs

Photographs and video recording tapes can be useful tools if relevant to the investigation. If a complaint involves excessive use of force, photographs of the complainant and the officer should be taken as close as possible to the time of the incident. Photographs also can be used to create a record of any other matter the investigator believes is necessary. Whenever possible, digital color photography should be used.

7/2014

The law enforcement agency should maintain a recent photograph of each officer. These can be used if a photo array is needed for identification purposes. If a photo array is used, it must be properly retained for possible evidentiary purposes.

## Physical Tests

Police officers who are the subjects of internal investigations may be compelled to submit to various physical tests or procedures to gather evidence.

*N.J.R.E.* 503(a) states that "no person has the privilege to refuse to submit to examination for the purpose of discovering or recording his corporal features and other identifying characteristics or his physical or mental condition." Evidence that may be obtained or procedures that may be used to obtain evidence under this rule include:

1. Breath sample
2. Blood sample
3. Buccal swab
4. Requiring suspect to speak
5. Voice recordings
6. Participation in a lineup
7. Handwriting samples
8. Hair and saliva samples
9. Urine specimens
10. Video taping
11. Field sobriety tests

For internal affairs investigations that may result in a criminal prosecution, physical tests should be conducted pursuant to a court order or an investigative detention under *Rule* 3:5A. Officers that refuse to perform or participate in a court-ordered physical test may be subject to a contempt of court sanction and agency discipline for failing to comply with the order.

For internal affairs investigations that may result in an administrative disciplinary proceeding, the internal affairs investigator or the appropriate supervisor may order subject officers to perform or participate in a physical test. The order must be reasonable and relevant to the investigation at hand. Officers that refuse to perform or participate in a lawfully ordered physical test can be disciplined for their refusal.

## Drug Testing

The testing of law enforcement officers in New Jersey for the illegal use of drugs is strictly regulated by the *Attorney General's Law Enforcement Drug Testing Policy*. This policy permits the testing of applicants and trainees for law enforcement positions. It further specifies that veteran law enforcement officers may only be tested for drugs if reasonable suspicion exists that they are using drugs or if they have been chosen as part of a regulated random drug testing program. In any case, drug testing is done through an analysis of urine samples by the State Toxicology Laboratory within the Department of Law and Public Safety.

The *Attorney General's Law Enforcement Drug Testing Policy* identifies specific responsibilities that may be assigned to internal affairs. These include the collection of specimens, the establishment of a chain of custody and the maintenance of drug testing records. Every officer assigned to internal affairs should be familiar with the *Attorney General's Law Enforcement Drug Testing Policy*.

## Polygraph

*N.J.S.A.* 2C:40A-1 states that an employer shall not influence, request or require an employee to take or submit to a lie detector test as a condition of employment or continued employment. To do so constitutes a disorderly persons offense. Therefore, a law enforcement officer should never be asked to take a polygraph examination as part of an internal affairs investigation. The investigator should not even suggest to the officer that a polygraph examination would be appropriate or that it "might clear this whole thing up." However, the subject officer may voluntarily request to take a polygraph examination.

Polygraph tests of civilian complainants and witnesses should only be used when a reasonable suspicion exists that their statements are false. Polygraph examinations should not be used routinely in internal affairs investigations. Under no circumstances should polygraph examinations be used to discourage or dissuade citizen complainants. In addition, a victim of sexual assault cannot be asked or required to submit to a polygraph examination.

## Search and Seizure

All citizens, including police officers, have a Fourth Amendment right to be free from unreasonable searches and seizures. In an internal affairs investigation, the Fourth Amendment applies to any search the employing agency undertakes. The internal affairs investigator must be cognizant of the various principles governing search and seizure, particularly where the investigator will conduct a search as part of a criminal investigation or will search personal property belonging to the subject officer.

Criminal investigations generally require the investigator to obtain a search warrant to conduct a search. Search warrants require probable cause to believe that the search will reveal evidence of a crime. In internal affairs investigations, a search warrant should be obtained before a search is conducted of a subject officer's personal property, including his or her home, personal car, bank accounts, safety deposit boxes, briefcases, etc. A warrant also may be necessary where a search of the subject officer's workplace is conducted and it is determined that the officer has a high expectation of privacy in the place to be searched. The internal affairs investigator should consult with the county prosecutor's office before undertaking the search of any workplace area in a criminal investigation.

The law is somewhat less restrictive as to searches conducted during an administrative investigation. While it appears that an employing agency does not need a warrant to conduct a search during an administrative investigation, the investigator should exercise great care when searching property or items in which the subject officer has a high expectation of privacy. Internal affairs investigators should document their reasons for conducting the search and limit its intrusiveness. If any doubts or concerns exist about the propriety or legality of a search, the investigator should seek advice from legal counsel before proceeding with the search.

During either administrative or criminal investigations, generally workplace areas may be searched without a warrant. The critical question is whether the public employee has a reasonable expectation of privacy in the area or property the investigator wants to search. The determination of this expectation must be decided on a case-by-case basis. There are some areas in a person's workplace where this privacy expectation can exist just as there are some where it does not. Areas that several employees share or where numerous employees go to utilize files or equipment would present no expectation, or a diminished expectation, of privacy. Included here would be squad rooms, lobby areas, dispatch areas, government-provided vehicles (patrol cars), general filing cabinets, etc.

However, employees may have a greater expectation of privacy in their own lockers, assigned desks or possibly in a vehicle assigned to them solely for their use. If a department intends to retain the right to search property it assigns to officers for their use, including lockers and desks, it should put officers on notice of that fact. This notification will help defeat an assertion of an expectation of privacy in the assigned property. The agency should issue a directive regarding this matter and provide notice of the policy in any employee handbook or personnel manual (including the rules and regulations) the agency provides. Notice should also be posted in the locker area and on any bulletin boards. The following is a sample of what such a notice should contain:

> The department may assign to its members and employees departmentally owned vehicles, lockers, desks, cabinets, etc., for the mutual convenience of the department and its personnel. Such equipment is and remains the property of the department. Personnel are reminded that storage of personal items in this property is at the employee's own risk. This property is subject to entry and inspection without notice.

In addition, if the department permits officers to use personally owned locks on assigned lockers and other property, it should be conditioned on the officer providing the department with a duplicate key or the lock combination.

With the introduction of new technologies in law enforcement, it may become necessary to search computers and seize their contents. The critical question remains whether the public employee has a reasonable expectation of privacy in information stored in a computer. While the determination of a reasonable expectation of privacy must be decided on a case-by-case basis, the law enforcement agency should take steps to actively and affirmatively diminish this expectation. The agency should state, in writing, that it retains the right to enter and review the contents of any department-issued computer at any time. This notice may be worded as follows:

> The department may assign to its members and employees departmentally owned computers for business purposes. Such computer equipment and its contents are and remain the property of the department. Personnel are prohibited from installing unauthorized software and from storing personal information in the computer, regardless of any password protection or encryption. The computers, their contents, and any email or electronic correspondence originating from or arriving at the department computer are the property of the department and are subject to entry and inspection without notice.

The courts routinely examine agency practice in evaluating the expectation of privacy. Written notification thus would quickly be nullified if representatives of the agency never entered or inspected any of these areas. In addition to notifying employees of the department's right to search and inspect, the agency should also, with some regularity, inspect these areas to establish the practice coinciding with the policy. Any search of departmental or personal property should be conducted in the presence of the subject officer and a property control officer.

A voluntary consent to a search may preclude some Fourth Amendment problems. A consent search eliminates the need to determine what threshold standard must be met before conducting the search or seizure, either for an administrative or criminal investigation. For consent to be legally valid in New Jersey, a person must be informed that he or she has the right to refuse to permit a search.[4] If a consent search is undertaken, the

---

[4] *State v. Johnson,* 68 *N.J.* 349 (1975).

Internal affairs investigator shall follow standard law enforcement procedures and have the subject officer sign a consent form after being advised of the right to refuse such a search.

## Electronic Surveillance

*N.J.S.A.* 2A:156A-1 *et seq.* governs the use of electronic surveillance information in New Jersey. This statute specifically covers the areas of:

"Wire communication," which essentially means any conversation made over a telephone (*N.J.S.A.* 2A:156A-2a);

"Oral communication," which means any oral communication uttered by a person who has an expectation that such communication will not be intercepted (*N.J.S.A.* 2A:156A-2b);

"Intercept," which means to acquire the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device (*N.J.S.A.* 2A:156A-2c); and

"Electronic communication," which means the transfer of signs, signals, writings, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio or other system (*N.J.S.A.* 2A:156A-2m).

All of these forms of communication are protected from intrusion and interception except under very narrowly defined exceptions.

One such exception is when one person in a communication decides to intercept (*e.g.*, record) the conversation. As long as this person is a part of the conversation, such recording is lawful. But if the person stops being a party to the conversation (*e.g.*, he or she walks away from the group or turns the telephone over to someone else), it is no longer lawful for him or her to intercept the conversation.

Another exception exists where a person, acting at the direction of an investigative or law enforcement officer, gives prior consent to intercept a wire, electronic or oral communication and is a party to the communication. This "consensual intercept" can only be made after the Attorney General or a county prosecutor, or their designee, approves it.

Pursuant to *N.J.S.A.* 2A:156A-4b, a law enforcement officer may intercept and record a wire or oral communication using a body transmitter if that officer is a party to the communication or where another officer who is a party requests or requires that such interception be made. Individual departmental or agency policy dictates procedures for such recordings. This kind of law enforcement non-third party intercept can be used during internal affairs investigations.

Generally, the use of evidence derived from an authorized wiretap is limited to criminal investigations and prosecutions. Agencies that wish to use wiretap information in a disciplinary proceeding should consult with their county prosecutor because it may be necessary to obtain a court order to so use it.

The monitoring of 9-1-1 telephone lines is required by law. Nothing prohibits the monitoring of other telephones used exclusively for departmental business if the agency can demonstrate a regulatory scheme or a specific office practice of which employees have knowledge. In such instances a diminished expectation of privacy exists in the use of these telephones, and monitoring would be acceptable.

The New Jersey Wiretap Act applies only to oral, wire and electronic communications. While not specifically covered by this law, reasonable limitations should exist on video surveillance. The primary issue is one of privacy. Video surveillance, especially covert surveillance, should not be used in areas where employees have a high expectation of privacy, such as locker rooms and bathrooms. In public areas, video surveillance may be used. In many law enforcement agencies, certain areas such as lobbies, cell blocks and sally ports have video surveillance for security reasons. Video obtained from these sources is applicable to internal investigations. Questions about the specific application of video surveillance, especially covert surveillance, should be addressed to the county prosecutor's office. It must be emphasized that this refers to video surveillance with no sound recording component.

Many law enforcement agencies use in-car video systems, which record the video image from a camera mounted in the car and an audio signal from a microphone worn by the officer. These recordings can be used in internal investigations because the video image is not restricted at all and the officer is a party to the audio portion of the recording at all times.

Some agencies equip their patrol vehicles or other vehicles with GPS devices. These devices can locate a vehicle with great accuracy. Information gleaned from these devices may be used in internal affairs investigations because the subject officer has no expectation of privacy in his or her whereabouts when performing police duties.

## Lineups

A law enforcement officer may be ordered to stand in a lineup to be viewed by witnesses or complainants. Probable cause need not exist, and the officer may be disciplined for refusal.[5]

The lineup must be constructed so as not to be unfairly suggestive. The same rule applies to photo arrays. *See* Attorney General Guidelines for Preparing and Conducting Photo and Live Lineup Identification Procedures; October 4, 2012, Memorandum and Revised Model Eyewitness Identification Procedure Worksheets.

## Investigation of Firearm Discharges

All incidents involving officer non-training firearm discharges, whether occurring on or off duty, must be thoroughly investigated. Whenever a firearm discharge results in injury or death, the county prosecutor and internal affairs must be notified immediately. Internal affairs personnel will proceed in the investigation as directed by the prosecutor, and should review all administrative reports the department requires. These reports should include a description of the incident, the date, time and location of the incident, the type of firearm used, the type of ammunition used and number of rounds fired, the identity of the officer, and any other information a superior officer requests. The involved officer's supervisor should assist the internal affairs investigator as needed.

Agencies that have established a "Shooting Response Team" to investigate officer firearm discharge incidents should coordinate their investigations with the internal affairs unit.

Officers investigating firearm discharges must strive to conduct a thorough and objective investigation without violating the rights of the subject officer or any other law enforcement officer. All supervisors and any other officer who may be called upon to do a firearm discharge

---

[5] *Biehunik v. Felicetta*, 441 F.2d 228 (2d Cir.), *cert. denied*, 403 U.S. 932 (1971).

investigation therefore must be thoroughly familiar with the department's entire internal affairs policy, including protection of the subject officer's rights and the procedures for properly investigating firearm discharges.

The investigator must consider relevant law, any Attorney General or county prosecutor policies and guidelines, and agency rules, regulations and policy. In addition to determining if the officer's actions were consistent with department regulations and policy, the internal affairs investigator should also examine the relevance and sufficiency of these policies. The investigator should also consider any relevant aggravating or mitigating circumstances.

The investigation of a shooting by an officer should include photographs, ballistics tests, and interviews with all witnesses, complainants and the officer involved. All firearms should be treated as evidence according to departmental procedures. A complete description of the weapon, its make, model, caliber and serial number must be obtained and, if appropriate, N.C.I.C. and S.C.I.C. record checks should be made.

In a firearm discharge investigation, the investigator must determine if the weapon was an approved weapon for that officer and if the officer was authorized to possess and carry it at the time of the discharge. The investigator must also determine if the weapon was loaded with authorized ammunition. The weapon must be examined for its general operating condition and to identify any unauthorized alterations made to it.

## Collateral Issues

The work of an internal affairs unit should not be limited to resolving citizen reports by narrowly focusing on whether the subject officer engaged in misconduct. In many cases, the examination of collateral issues presented by the citizen's report can be as important as the resolution of the allegation itself. For example, while investigating an allegation of excessive force during an arrest, the officer's actions in making the arrest may be improper. In such cases, even though the investigation may exonerate the officer of the excessive force allegation, internal affairs must still examine whether the officer should have been effecting the arrest at all.

Examining collateral issues can provide the law enforcement agency and its executive officers with information concerning:

- The utility and effectiveness of the department's policies and procedures.

- The competency and skills of individual law enforcement officers.

- Appropriate topics for in-service training programs.

- The allocation of resources by the law enforcement agency and other municipal agencies.

The identification and examination of collateral issues is critically important to the internal affairs process. Internal affairs investigators are in the unique position of examining law enforcement operations from the inside. Their insight, if properly used, can be extremely helpful to management. In contrast, the failure to use this resource can deprive the law enforcement agency of the ability to identify and correct problems with personnel and procedures through self-critical analysis. It can also lead to an erosion of community support for the department. An internal affairs process that is objective and complete is critical to the credibility and reputation of the law enforcement agency within the community.

# Interviewing Members of the Department

## General Background

The interview of a police officer as either the subject of an internal affairs investigation or as a witness to an incident that is the subject of such an investigation represents a critical stage in the investigative process. The information gained during such an interview often will go a long way toward resolving the matter, regardless of the outcome.

The difficulty in conducting officer interviews, particularly subject officer interviews, is the differing legal principles that apply depending on the nature of the interview and the type of investigation being conducted. For example, a subject officer suspected of criminal conduct will be interviewed in a manner far different than an officer suspected of committing just a disciplinary infraction. A further distinction may be made when the officer to be interviewed is believed to be a witness to either criminal conduct or an administrative infraction.

While a police officer has the same constitutional rights as any other citizen during a criminal investigation, their status as a police officer may create special concerns. For the most part, the internal affairs investigator should utilize the same procedures and apply the same legal principles to the subject officer as he or she would to any other target or suspect in a criminal investigation. However, the internal affairs investigator should recognize that the interview process of a police officer is somewhat different than that of any other citizen.

A police officer has the same duty and obligation to his or her employer as any other employee. Thus, where an internal affairs investigation is being conducted solely to initiate disciplinary action, the officer has a duty to cooperate during an administrative interview. The officer also must truthfully answer all questions put to him or her during the course of the investigation. Failure to fully cooperate with an administrative investigation and/or to be completely truthful during an administrative interview can form the basis for disciplinary action separate and apart from the allegations under investigation.

For the internal affairs investigator, it is critical to distinguish between those investigations involving potential criminal conduct and those limited to administrative disciplinary infractions. The investigator also must be able to identify and apply the appropriate procedures to be utilized during the interview process in either a criminal or an administrative investigation. Failure to identify and apply the appropriate procedures can compromise and render inadmissible evidence gathered during the interview process in a criminal investigation or needlessly complicate the interview process during an administrative investigation.

The vast majority of internal affairs investigations will be limited to alleged disciplinary infractions and the vast majority of law enforcement officer interviews conducted during an internal affairs investigation will be limited to gathering evidence of disciplinary infractions. But in cases of a potential criminal violation, it is absolutely necessary that the internal affairs investigator coordinate officer interviews with the county prosecutor's office.

Because the county prosecutor is ultimately responsible for prosecuting criminal cases, the internal affairs investigator shall defer to the prosecutor's supervision and direction in conducting officer interviews. The investigator shall consult with the county prosecutor prior to initiating an officer interview in matters that could involve criminal conduct, and shall pay particular attention to the county prosecutor's instructions concerning the types of interviews to be conducted and procedures to be utilized (e.g., *Miranda* warning, *Garrity* warning[6], etc.).

---

[6] *Garrity v. New Jersey*, 385 U.S. 493 (1967) (coerced statements obtained by threat of removal from office cannot be used in criminal proceedings); *see* Appendix J.

7/2014

Police officer interviews during an internal affairs investigation are rendered difficult by the conflict that exists between the officer's right against self-incrimination in criminal interviews and the obligation to answer questions truthfully during an administrative investigation. So while an agency may compel an officer to answer questions posed during the course of an administrative investigation, an officer cannot be forced to give answers that could be used against him or her in a criminal prosecution. Officers who have been compelled by order to produce incriminating information, with the belief that a failure to do so will result in disciplinary action, cannot have that evidence used against them in a criminal prosecution. However, an officer can be compelled to provide answers during an internal affairs investigation if those answers are to be used as evidence only in a disciplinary proceeding.

A subject officer who reasonably believes that what he or she might say during an internal affairs interview could be used against him or her in a criminal case cannot ordinarily be disciplined·for exercising his or her *Miranda* rights. However, an officer can be disciplined for refusing to answer questions during an internal affairs interview if he or she has been told that whatever he or she says during the interview will not be used in a criminal case. Informing an officer that his or her statement will not be used against him or her in a criminal case is called a *Garrity* warning. This warning informs the officer being interviewed that he or she must cooperate with the investigation and can be disciplined for failing to do so because the county prosecutor has decided to provide the officer with "use immunity."

It is for this reason that the internal affairs investigator must continually reassess the nature of an internal affairs investigation as evidence is being gathered. Having initially determined that a particular allegation is criminal or administrative in nature, it is important for the internal affairs investigator to revisit that decision during the course of an investigation to determine whether any of the evidence gathered following the initial determination changes the investigation's nature and scope. If the nature and scope of an investigation change, the investigator must be prepared to change the methods and procedures he or she utilizes to reflect the new focus. For example, if an investigator initially determines that an allegation appears to be a disciplinary matter but later evidence leads the investigator to conclude that criminal conduct may have occurred, he or she must cease using the methods and procedures appropriate for an administrative investigation and notify the county prosecutor immediately before proceeding further.

In the sections that follow, the details of interviewing law enforcement officers in internal matters will be discussed. The chart in Figure 1 provides an overview of that information.

**Figure 1.**

|  | CRIMINAL<br>Investigation | ADMINISTRATIVE<br>Investigation |
|---|---|---|
| Officer is<br>SUBJECT | • Prosecutor notification<br>• Treat as any other defendant<br>• *Miranda* warning<br>• No *Garrity* warning unless prosecutor approves<br>• May require routine business reports<br>• No special reports<br>• Right to counsel (attorney) | • Obligation to cooperate<br>• Administrative interview form<br>• May require special reports<br>• Cannot charge as a subterfuge<br>• Right to representative |
| Officer is<br>WITNESS | • Obligation to cooperate<br>• No *Miranda* warning<br>• Witness acknowledgement form<br>• May be entitled to a *Weingarten*[7] representative | • Obligation to cooperate<br>• Witness acknowledgement form<br>• May be entitled to a *Weingarten* representative |

Serious allegations of officer misconduct may implicate both a violation of a criminal statute and of an agency's rules and regulations. As a result, a criminal investigation and an administrative disciplinary investigation may be needed to properly resolve a misconduct complaint. Where both a criminal and an administrative disciplinary investigation are needed, the internal affairs investigator from the subject officer's agency is often expected to conduct both. Under these circumstances, the methods employed in the criminal investigation conflict with those used in the administrative investigation.

Typically, this conflict will become most apparent during subject officer interviews. As already explained, a subject officer has the right to remain silent during a criminal investigative interview. But the same officer must cooperate and answer questions posed by his or her employer during an administrative disciplinary interview. So while the internal affairs investigator cannot require a subject officer to answer questions during a criminal interview, he or she can require that officer to answer questions during an administrative disciplinary interview.

The confusion caused by these issues can be alleviated several ways. One way is to separate the investigations by time - - the criminal investigation is completed first and then the administrative investigation may follow. Another way is to conduct bifurcated investigations. In a bifurcated investigation, the responsibility for a criminal investigation is separated from that for an administrative investigation. Thus, one investigator (typically from the prosecutor's office) is assigned the responsibility of gathering evidence of criminal wrongdoing while a second (typically the internal affairs investigator from the subject officer's agency) is assigned the responsibility of gathering evidence of a disciplinary infraction.

---

[7] *N.L.R.B. v. Weingarten*, 420 *U.S.* 251 (1975) (unionized employee who reasonably believes that an investigatory interview may result in disciplinary action against him or her is entitled to union representation).

With a bifurcated investigation, the internal affairs investigator will not be forced to juggle the roles of criminal and administrative investigator during an internal affairs investigation. This is particularly important during the subject officer interview for three reasons. First, the internal affairs investigator will not be forced to decide whether and when to issue a *Miranda* or a *Garrity* warning during the interview. In a bifurcated investigation, the criminal investigator will be limited to issuing a *Miranda* warning while the administrative investigator will be limited to issuing a *Garrity* warning. Second, by assigning distinct roles to each investigator, there will be no confusion on the part of the subject officer as to the particular interview's purpose. Third, because a bifurcated investigation permits both the criminal and administrative investigations to take place simultaneously, the administrative investigator can be confident that, once the criminal investigation has been completed, the administrative investigation will also be substantially complete. As a result, the subject officer's agency will have no difficulty complying with the 45 day rule under *N.J.S.A.* 40A:14-147.

## *Criminal* Investigation, Officer is *Subject*

### Requirement 7

> Whenever a possibility exists that the investigation may result in criminally prosecuting the officer or that the county prosecutor may be conducting a separate criminal investigation, the internal affairs investigator must consult with the county prosecutor prior to interviewing the officer.

Once an investigation becomes criminal in nature, the subject officer shall be advised of his or her right against self-incrimination consistent with the requirements of the law and this policy. Criminal interviews should be conducted only with the prior approval, or at the direction, of the county prosecutor.

The need to issue *Miranda* warnings generally is triggered whenever an individual's questioning is custodial in nature. For custodial interviews, the question is whether a reasonable person would believe that he or she is free to leave. So a subject officer who is not free to leave a criminal interview should be provided a *Miranda* warning. See Appendix I.

However, the internal affairs investigator should be aware that other factors may also serve to affect a subject officer's decision to answer questions during a criminal interview. For example, directing an officer to appear at a particular time and place may generate confusion on the officer's part as to whether he or she is being required to participate in the interview. When these circumstances or any other questions as to the need to provide a warning in criminal interviews are present, the internal affairs investigator should always consult with the county prosecutor regarding whether the subject officer should be advised of his or her right against self-incrimination.

If the subject officer waives his rights, the interview may then continue. Unless the officer specifically waives his or her Fifth Amendment rights, any incriminating statements obtained under direct order will not be admissible in a criminal prosecution but will be admissible in an administrative hearing. The subject officer should be afforded the opportunity to consult with an attorney prior to an interview.

If the officer has invoked his or her *Miranda* rights but the department deems that it must have the answers to specific questions to properly conduct its investigation, the department must contact the county prosecutor to request use immunity for the interview to continue. This contact should be made timely so that the county prosecutor can review all relevant reports and have a full briefing prior to determining whether to grant use immunity. Use immunity provides that anything the officer says under the grant of immunity, and any evidence derived from his or her statements, cannot be used against him or her in a criminal proceeding (except for perjury or false swearing if the information is not truthful). But use immunity does not eliminate the possibility that the subject officer will be prosecuted. A criminal prosecution may proceed even though the target or defendant has received use immunity.

If the county prosecutor grants use immunity, the department shall advise the subject officer in writing that he or she has been granted such immunity in the event his or her answers implicate him or her in a criminal offense. The officer must then answer the questions specifically and narrowly related to the performance of his or her official duties, but no answer given nor any evidence derived from the answer may be used against this officer in a criminal proceeding. At this point, any officer refusing to answer is subject to disciplinary charges and possible dismissal from employment.

A grant of use immunity shall be recorded on a form the subject officer signs and whose signature is witnessed. The completed form must be made a part of the investigative file. *See* the sample form in Appendix J. In all cases, approval from the authorizing assistant prosecutor or deputy attorney general must be obtained before giving the *Garrity* warning.

### *Criminal* Investigation, Officer Is *Witness*

When interviewing a law enforcement officer as a witness, he or she must be made aware of the differences between being a witness in a criminal investigation and being the subject of a criminal investigation. The officer also shall be advised that he or she is not the subject of the investigation at this time. Appendix G provides a model form that may be used for this purpose. If at any time the officer becomes a subject of the investigation, he or she shall be advised of that fact and the appropriate procedures must be followed.

Officers who are witnesses must cooperate. They must truthfully answer all questions narrowly and directly related to performing their duty. "Performance of duty" includes an officer's actions, observations, knowledge and any other factual information of which they may be aware, whether it concerns their own performance of duty or that of other officers. If the officer feels his or her answer would incriminate him or her in a criminal matter, the officer must assert his or her *Miranda* rights.

### *Administrative* Investigation, Officer Is *Subject*

A public employee must answer questions specifically, directly and narrowly related to the performance of his or her official duties, on pain of dismissal. This obligation exists even though the answers to the questions may implicate them in a violation of agency rules, regulations and procedures that may ultimately result in some form of discipline up to and including dismissal. In short, no "right to remain silent" exists in administrative investigations.

However, internal affairs investigators in civil service jurisdictions should be aware that, under civil service rules, an employee cannot be forced to testify at his or her own disciplinary hearing.[8] As a matter of fairness, the internal affairs investigator in a civil service jurisdiction should refrain from questioning a subject officer about a particular disciplinary offense if the officer has already been charged with that offense and is awaiting an administrative hearing on the charge.

Prior to the start of any questioning, the officer shall be advised that he or she is being questioned as the subject of an investigation into potential violations of department rules and regulations, or fitness for duty. He or she should be advised of the subject matter under investigation, and that he or she will be asked questions specifically related to performing his or her official duties.

This information shall be recorded on a form which the subject officer signs and whose signature is witnessed. The completed form must be made a part of the investigative file. *See* the sample form in Appendix H. *The form in Appendix H shall only be used for administrative, non-criminal investigations.*

If the officer refuses to answer questions during this interview, the interviewer should inquire about the reason for that refusal.

*If the subject officer states that he refuses to answer any questions on the grounds that he may incriminate himself in a criminal matter, even though the investigators do not perceive a criminal violation, the department should discontinue the interview and contact the county prosecutor.*

If the department wants to continue its administrative interview and the county prosecutor agrees to grant use immunity, the department shall advise the subject officer in writing that he or she has been granted use immunity if his or her answers implicate him or her in a criminal offense. The officer must then answer the questions specifically related to performing his or her official duties, but no answer given, nor evidence derived therefrom, may be used against the officer in a criminal proceeding. If the officer still refuses to answer, he or she is subject to disciplinary charges for that refusal, including dismissal. This information shall be contained in a form that the subject officer signs and whose signature is witnessed. The completed form must be made a part of the investigative file. *See* the sample form in Appendix J.

If the subject officer refuses to answer on any other grounds, he or she should be advised that such refusal will subject him or her to disciplinary action, including dismissal, in addition to discipline for the matter that triggered the interview in the first place. If the officer still refuses, the interview should be terminated and appropriate disciplinary action initiated.

The courts have decided that a public employer must permit an employee to have a representative present at an investigative interview if the employee requests representation and reasonably believes the interview may result in disciplinary action.[9] However, a representative shall be permitted to be present at the interview of a subject officer whenever he or she requests a representative. While the Sixth Amendment right to counsel does not extend to administrative investigations, an officer shall be permitted to choose an attorney as their representative if he or she so desires.

---

[8]  *N.J.A.C.* 4A:2-2.8(c).

[9]  *N.L.R.B. v. Weingarten,* 420 *U.S.* 251 (1975).

If it appears that the presence of counsel or another representative the subject requests will not disrupt or delay the interview, no reason exists to prevent his or her presence as an observer.

But the representative or attorney cannot interfere with the interview. If the representative or attorney is disruptive or interferes, the investigator can discontinue the interview and should document the reasons for doing so. The investigator must control the interview and cannot allow the representative or subject to take control.

## Administrative Investigation, Officer is *Witness*

When interviewing a law enforcement officer as a witness, he or she must be made aware of the differences between being a witness in an administrative investigation and being the subject of an administrative investigation. The officer also should be advised that he or she is not the subject of the investigation at this time. Appendix G provides a model form that may be used for this purpose. If at any time the officer becomes a subject of the investigation, he or she should be advised of that fact and the appropriate procedures followed.

Officers who are witnesses must cooperate and truthfully answer all questions narrowly and directly related to performing their duty. "Performance of duty" includes an officer's actions, observations, knowledge and any other factual information of which they may be aware, whether it concerns their own performance of duty or that of other officers. If the officer feels his or her answer would incriminate him or her in a criminal matter, the officer must assert his or her *Miranda* rights.

## Interviewing Procedures

Interviews should take place at the internal affairs office or a reasonable and appropriate location the investigator designates. The subject officer's supervisor should be made aware of the time and place of the interview so the officer's whereabouts are known. Interviews shall be conducted at a reasonable hour when the officer is on duty, unless the seriousness of the matter requires otherwise.

The employee shall be informed of the name and rank of the interviewing investigator and all others present during the interview. The questioning session must be of reasonable duration, considering the subject matter's complexity and gravity. The officer must be allowed time for meal breaks and to attend to personal physical necessities.

In cases of potential criminal conduct, interviews of subject officers should be recorded consistent with Attorney General Directives 2006-2 and 2006-4. A copy of the directives may be found in Appendix T. As to serious disciplinary infractions, the agency should audio or video record the interview, or make a stenographic record. A transcript or copy of the recording shall be made available to the officer, if applicable, at the appropriate stage of a criminal or disciplinary proceeding. If the subject officer wishes to record the interview, he or she may do so, and a copy of the recording shall be made available to the department upon request, at the agency's expense. Agencies should consider adopting a policy requiring officers to inform the agency or internal affairs investigator if the officer plans to record the interview.

Any questions asked of officers during an internal investigation must be "narrowly and directly" related to performance of their duties and the ongoing investigation.[10]  Officers must answer questions directly and narrowly related to that performance.  All answers must be complete and truthful, but officers cannot be compelled to answer questions having nothing to do with their performance as law enforcement officers, that do not implicate a rule or regulation violation, or that are unrelated to the investigation.

At the interview's conclusion, the investigator should review with the subject officer all the information obtained during the interview to alleviate any misunderstandings and to prevent any controversies during a later proceeding.

---

[10] *Gardner v Broderick*,  392 *U.S.* 273 (1968).

# Internal Affairs Records

## The Internal Affairs Report

At the conclusion of the internal affairs investigation, the investigator shall submit a written report consisting of an objective investigative report recounting all of the case's facts and a summary of the case, along with conclusions for each allegation, and recommendations for further action.

### Investigative report

The first part of the report will be an objective recounting of all the relevant information the investigation disclosed, including statements, documents and other evidence. This part of the report is similar in all respects to a standard law enforcement investigative report, and should contain a complete account of the investigation.

### Summary and Conclusions

The investigator should summarize the case and provide conclusions of fact for each allegation. These conclusions of fact should be recorded as exonerated, sustained, not sustained or unfounded.

If the conduct of an officer was found to be improper, the report must cite the agency rule, regulation or S.O.P. violated. Any aggravating or mitigating circumstances surrounding the situation, such as unclear or poorly drafted agency policy, inadequate training or lack of proper supervision, shall also be noted.

If the investigation reveals evidence of misconduct not based on the original complaint, this too must be reported. An investigation concerning this secondary misconduct should be conducted.

## Internal Affairs Records

### Requirement 8

The agency must establish and maintain an internal affairs records system consisting of, at least, an internal affairs index system and a filing system for all documents and records. Access to these records shall be restricted.

Internal affairs personnel shall maintain a filing system accessible only to unit personnel and the law enforcement executive. Other personnel may be given access based on a specific need, such as a deputy chief in the law enforcement executive's absence. Access to these records must be specifically addressed with department policy and procedures. The list of those authorized to access these files must be kept to a minimum.

Physical security measures also should be taken, such as using securely locked filing cabinets in secured offices. If a law enforcement agency uses computers to maintain internal affairs records of any kind, special security measures must be taken. A stand-alone personal computer is the most secure system to limit unauthorized access to internal affairs records. If a stand-alone computer is not feasible, reasonable measures, including the use of fire walls and/or password protected software, should be utilized to control access to investigative files and related materials.

**Internal Affairs Index File**

The purpose of the internal affairs index file is to serve as a record control device to maintain an inventory of internal affairs case files and to summarize each case's status for authorized personnel. The instrument used for such an index file will vary by agency and could include a log book, index cards or a computerized data base.

All internal affairs complaints shall be recorded in the index file. Entries should record each case's basic information, including the subject officer, allegations, complainant, date received, investigator assigned, disposition and disposition date for each complaint. A unique case number assigned to each internal affairs complaint will point to the complete investigation file's location and will simplify case tracking.

**Investigation Files**

An internal affairs investigation file is needed for all internal affairs reports. Given the wide range of internal affairs allegations a law enforcement agency receives, these investigation files might consist of only the initial report form and the appropriate disposition document. On the other hand, investigation files might include extensive documentation of an investigation. The internal affairs investigation file should contain the investigation's entire work product, regardless of the author. This includes investigators' reports, transcripts of statements, and copies of all relevant documents. The file should also include all related material from other department incidents that may be applicable. For instance, if an allegation is made of excessive force during an arrest, the internal affairs investigation file should contain copies of the reports from that arrest.

Where an internal affairs investigation results in the filing of criminal charges, the file shall be made available to the county prosecutor's office. It will be the responsibility of that office to decide which items are discoverable and which are admissible. In these cases, the department must follow the county prosecutor's instructions.

## Retention Schedule

Investigative records created during an internal affairs investigation are included in the "Records Retention and Disposition Schedule for Local Police Departments" issued by the New Jersey Division of Archives and Records Management. Under the schedule, files concerning a criminal homicide must be permanently maintained. The schedule also requires that any other file involving a criminal matter resulting in the subject ·officer's arrest must be maintained for 75 years. While the schedule further suggests that all other criminal or administrative internal affairs investigative records be maintained for at least 5 years, agencies should maintain these files as they relate to a particular officer for that officer's career plus 5 years.