**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Civil Action No. 15-1081 (MAS) (TJB) |
| Petitioner, | |
| v. | **MEMORANDUM OPINION** |
| CITY OF LONG BRANCH, | |
| Respondent. | |

**SHIPP, District Judge**

This matter comes before the Court on Petitioner Equal Employment Opportunity Commission's ("EEOC") Motion for Order to Show Cause Why an Administrative Subpoena (EEOC Subpoena No. NY-A14-011 ("Subpoena")) Should Not be Enforced (ECF No. 25) ("Motion for OSC"). Respondent City of Long Branch ("Respondent") filed opposition (ECF No. 26), and the EEOC replied (ECF No. 27). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, and for other good cause shown, the Court GRANTS Petitioner's Motion and finds that the Subpoena should be enforced in full.

**I.   Background**

On or about February 7, 2013, Lieutenant Lyndon B. Johnson ("Lt. Johnson" or "Charging Party") filed a charge of discrimination ("Charge") against Respondent with the EEOC. (EEOC's Moving Br. for Order to Show Cause ("OTSC") 1-2, ECF No. 1-2.) Lt. Johnson, an African-American Lieutenant in the Long Branch Police Department, alleged that Respondent, as

his employer, discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). (*Id.*) Specifically, Lt. Johnson alleged that "he was subjected to different and harsher disciplinary measures than similarly situated white colleagues who committed the same or similar [alleged] infractions." (*Id.* at 2.)

On August 19, 2013, the EEOC served Respondent with a Notice of Charge. (*Id.*) In response to the Charge, Respondent asserted that "the disciplinary actions taken against Lt. Johnson are consistent with a race-neutral application of the Police Department's policies and standards and with disciplinary actions taken against Lt. Johnson's comparators." (*Id.*) "[T]o investigate whether Lt. Johnson was subjected to harsher discipline than his white co-workers for similar infractions, the EEOC requested all disciplinary records for Lt. Johnson and six Caucasian comparators." (*Id.*) In response to this request, "Respondent notified [the] EEOC that it was gathering the materials but would produce them only if [the] EEOC agreed to certain restrictions in the use and disclosure of the 'confidential' materials." (*Id.*) Notably, these restrictions included a prohibition against providing any material designated "'confidential' . . . in whole or in part, other than in the form of the EEOC's opinions and conclusions . . . to [Lt. Johnson] and/or his counsel, representative, or the like." (*Id.* at 3.) Following the EEOC's refusal to agree to these restrictions, Respondent advised the EEOC that it would not produce the requested information "absent a Court Order." (*Id.*)

Thereafter, the EEOC served the Subpoena on Respondent via e-mail correspondence and certified return receipt requested mail. (ECF No. 1-3 at 3, ¶ 15.) Respondent did not file a timely objection to the Subpoena that complied with the applicable regulations. Following Respondent's failure to produce documents in response to the Subpoena, the EEOC filed a motion to enforce the Subpoena in this Court. (ECF No. 1.) The motion was referred to Magistrate Judge Bongiovanni,

who found that the EEOC was not entitled to share the requested information about other police officers with Lt. Johnson. (ECF No. 7 at 4.) The EEOC filed an Appeal of the Magistrate Judge's Decision and this Court, applying a deferential standard of review, affirmed Judge Bongiovanni's ruling. (ECF Nos. 8, 11.)

The EEOC appealed the affirmance to the Third Circuit, which vacated and remanded for proceedings consistent with its decision. *EEOC v. City of Long Branch*, 866 F.3d 93, 101 (3d Cir. 2017). The Third Circuit, however, did not decide either of the two substantive issues on appeal and, instead, addressed at length the preliminary procedural issue of "the District Court [treating] the motion to enforce that the Magistrate Judge had reviewed as a non-dispositive motion instead of a dispositive motion."[1] *Long Branch*, 866 F.3d at 98-101. The Third Circuit also indicated that, upon remand, "[t]he District Court may consider the motion to enforce in the first instance or it may treat the Magistrate Judge's order as a report and recommendation and allow the parties the opportunity to object." *Long Branch*, 866 F.3d at 101.

Following remand, the EEOC filed a motion to enforce the judgment or mandate from the Third Circuit (ECF No. 18), which was administratively terminated (ECF No. 21). After the Court

---

[1] The Court notes that, prior to the Third Circuit's remand in this matter, magistrate judges in the District of New Jersey routinely—and directly—resolved issues with respect to the enforcement of subpoenas. *See, e.g., In re Centrix Fin., LLC*, No. 12-6471 (AET), 2012 WL 6625920, at *1 (D.N.J. Dec. 18, 2012) (U.S. Magistrate Judge Bongiovanni granted motion to quash subpoena); *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, No. 11-7013 (JLL), 2012 WL 1191214, at *1 (D.N.J. Apr. 10, 2012) (U.S. Magistrate Judge Hammer denied motion to compel non-party to produce documents responsive to a subpoena); *Coactiv Capital Partners, Inc. v. Printfacility, Inc.*, No. 12-235 (KSH), 2013 WL 4008904, at *1 (D.N.J. Aug. 5, 2013) (U.S. Magistrate Judge Waldor granted plaintiff's motion to enforce rights and compel compliance with information subpoena). The following subpoena enforcement cases were also directly resolved by District of New Jersey magistrate judges: *Hecht v. Zois*, No. 17-02563 (MAS) (TJB); *Cor Clearing, LLC v. E-Trade Clearing LLC*, No. 15-8989 (JMV) (JBC); *Acosta v. AJM Packaging Corp.*, No. 17-12010 (JHR) (AMD); *Koenig v. Koenig*, No. 17-02623 (NLH) (KMW); and *O'Boyle v. Sufrin et al.*, No. 16-02517 (NLH) (KMW).

3

issued an Order Reopening the Case (ECF No. 24), the EEOC filed the present Motion (ECF No. 25). The Court has elected to review the EEOC's Motion as if it was brought before the Court in the first instance.

## II. Analysis

In its decision, the Third Circuit framed the two issues that the EEOC raised on appeal as the: (1) "exhaustion issue" or "whether Long Branch is precluded from contesting the motion to enforce because it failed to exhaust its administrative remedies;" and (2) "disclosure issue" or "whether the EEOC may disclose information from the non-charging parties' employment and personnel records to Lt. Johnson." *Long Branch*, 866 F.3d at 98. Although the Third Circuit did not decide these substantive issues, it provided guidance in a footnote. *Long Branch*, 866 F.3d at 101 n.6. The Court will address each of the substantive issues in light of the Third Circuit's guidance.

### A. Exhaustion Issue

The exhaustion of federal administrative remedies doctrine encourages parties to utilize all resources of an Article I federal administrative agency before seeking judicial relief from an Article III federal court. *See Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) ("It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief."); *Meyers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938) ("[T]he long-settled rule of judicial administration [is] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."). The exhaustion doctrine provides a federal administrative agency the opportunity to review and modify matters within its area of expertise. *See Parisi v. Davidson*, 405 U.S. 34, 37

4

(1972) ("The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence.").

The exhaustion doctrine applies to EEOC subpoena enforcement actions by requiring the party served with an EEOC subpoena to file a petition to revoke or modify the subpoena with the EEOC (under 29 C.F.R. § 1601.16(b)(1)-(2)) before filing an action in federal court. *See EEOC v. Roadway Express, Inc.*, 569 F. Supp. 1526, 1528-29 (N.D. Ind. 1983) (after finding that [the defendant] had waived its right to object to an EEOC subpoena by failing to file a petition to revoke, the Court stated that "[i]t has long been established that a party will normally be denied judicial relief for injury until administrative remedies have been exhausted."). Pursuant to 29 C.F.R. § 1601.16(b)(1)-(2):

> Any person served with a subpoena who intends not to comply shall petition the issuing Director or petition the General Counsel, if the subpoena is issued by a Commissioner, to seek its revocation or modification. . . . Petitions must be mailed to the Director or General Counsel, as appropriate, *within five days (excluding Saturdays, Sundays and Federal legal holidays)* after service of the subpoena. . . . The petition shall separately identify each portion of the subpoena with which the petitioner does not intend to comply and shall state, with respect to each such portion, the basis for noncompliance with the subpoena. A copy of the subpoena shall be attached to the petition and shall be designated "Attachment A." 29 C.F.R. § 1601.16(b)(1)-(2) (emphasis added).

The facts of the present matter reflect that the EEOC served its Subpoena on Respondent on July 23, 2014 via e-mail correspondence and certified mail, with return receipt requested.[2] (ECF No. 1-3 at 3, ¶ 15.) Respondent failed to file a petition with the EEOC under 29 C.F.R. § 1601.16(b)(1)-(2) by: July 30, 2014, the five-day deadline following service of the e-mail Subpoena; or August 1, 2014, the five-day deadline following service of the certified mail

---

[2] Respondent received the certified mail copy on July 25, 2014. (*Id.*)

Subpoena. In response to the Subpoena, Respondent only submitted a non-conforming, undated document entitled "Notice of Motion to Quash Subpoena," which the EEOC received on August 7, 2014.[3] (ECF No. 1-3 at 3, ¶ 16.) Respondent, accordingly, did not file a conforming petition with the EEOC by the requisite deadline.

In addition, Respondent did not adequately justify its noncompliance with the deadline. Respondent relies on *EEOC v. Lutheran Social Services*, 186 F.3d 959 (D.C. Cir. 1999), *EEOC v. WinCo Foods, Inc.*, No. 05-0486, 2006 U.S. Dist. LEXIS 64521 (E.D. Ca. Sept. 8, 2006); and *EEOC v. Bashas', Inc.*, No. 09-0209, 2009 WL 3241763 (D. Ariz. Sept. 30, 2009), to argue that because the EEOC did not expressly notify it about the relevant regulation and did not provide the five-business-day response deadline on the face of the Subpoena, its failure to timely comply with the Subpoena should be excused. (Resp't's Opp'n Br. 5-14, ECF No. 26.)

The Court finds Respondent's arguments unavailing and, instead, agrees with the EEOC's position that:

> [w]hile the three out-of-circuit cases cited by Respondent do note that the deadlines were not provided on the face of the subpoenas at issue, that fact is not dispositive even in those cases. Additionally, here, Respondent does not actually claim that it was not aware of the proper administrative review procedures, that it confronted some difficulty in discerning the proper procedures, or that its ignorance of the requirements caused its failure to comply with the governing regulations. Respondent, a government entity, is and has been represented by counsel throughout the EEOC investigation. There is nothing in the record that provides any explanation as to why Respondent did not exhaust its administrative remedy by filing a timely and proper petition to revoke. Hence, there is no evidence that the lack of explicit notice in the body of the subpoena caused

---

[3] Although Respondent apparently submitted the document to the EEOC, it contained a caption for the Superior Court of New Jersey Department of Law and Public Safety Division on Civil Rights and reiterated Respondent's position that it would not disclose the requested documents without an executed confidentiality agreement. *EEOC v. City of Long Branch*, 886 F.3d 93, 96-97 (3d Cir. 2017); (ECF No. 17-1 at 4). No action was taken with respect to this document.

> Respondent's failure to exhaust. It would be improper to give
> weight to a factor where there is no evidence that it had an effect on
> Respondent's actions.

(Pet'r's Reply Br. 4-5, ECF No. 27.) Here, Respondent did not demonstrate that Petitioner was required to notify it of the five-day deadline on the face of the Subpoena. In addition, Respondent was represented by counsel who should have been capable of determining the five-business-day deadline to respond to the EEOC's Subpoena. Indeed, Respondent filed a document entitled "Notice of Motion to Quash Subpoena," implying that Respondent's counsel knew, at the very least, that some type of response to the EEOC's Subpoena was necessary. Thus, Respondent's reliance on *Lutheran* as well as *Winco Foods* and *Bashas'* is misinformed.[4]

Here, the Court finds that Respondent failed to file a petition to modify or revoke the Subpoena within five business days of being served with the Subpoena under 29 C.F.R. § 1601.16(b)(1)-(2) and did not provide adequate justification for its late filing. The Court, consequently, finds that Respondent failed to exhaust its administrative remedies. Nonetheless, even if the Court found reason to excuse Respondent's failure to exhaust, Respondent's attempt to avoid disclosure would fail, as discussed below.[5]

---

[4] Additionally, Respondent argues that under *Lutheran*, *Winco Foods*, and *Bashas'*, the EEOC's continual awareness that Respondent would not provide the requested comparator files unless the EEOC entered into a Confidentiality Agreement somehow excuses Respondent's failure to comply with the five-business-day deadline in 29 C.F.R. § 1601.16(b)(1)). (Resp't's Opp'n Br. 7, 11-14.) The Court finds this argument unpersuasive.

[5] Respondent also contends that it does not dispute the scope of the EEOC's Subpoena or its willingness to comply with the subpoena and produce the subject confidential documents but "simply requests that the EEOC enter into a Confidential[ity] Agreement and agree not to disclose said documents to the public or to the Charging Party, Lt. Johnson. . . . [R]espondent also does not dispute the EEOC's right to obtain the subject confidential documents nor object to the subpoena, and agreed to conditionally produce the confidential documents even before the subpoena was issued." (Resp't's Opp'n Br. 4-5.) This, however, does not excuse Respondent's failure to exhaust administrative remedies.

## B. Disclosure Issue

The Third Circuit instructed that if the Court reached the disclosure issue upon remand, it should reconsider its reliance on *Associated Dry Goods* and should utilize the framework for confidentiality orders articulated in *EEOC v. Kronos, Inc.* in considering any limitations on disclosure. *Long Branch*, 866 F.3d at 101 n.6. Specifically, the Third Circuit stated that:

> [w]hile we do not definitively resolve the disclosure or exhaustion issues, we nevertheless will correct an unambiguous error of law in the framework employed by the District Court that has been briefed in this appeal and that, as a pure legal issue, would have been reviewed *de novo* regardless of the treatment of the enforcement motion as dispositive or nondispositive.
>
> We believe that both the District Judge and Magistrate Judge misread the Supreme Court's opinion in *Associated Dry Goods* as holding that a charging employee may not see investigative information obtained by the EEOC from other employees' files. To the contrary, the Court in *Associated Dry Goods* held that an employee filing a charge with the EEOC is not a member of the "public" to whom disclosure is prohibited. *See Assoc. Dry Goods*, 449 U.S. at 600-03. The limiting language upon which the District and Magistrate Judges relied refers to a situation in which multiple charging parties — such as multiple aggrieved employees — wish to obtain disclosure of evidence produced in each other's cases, not in their own. *See id.* at 603 (explaining that a charging party is not entitled to "know the content of any other employee's *charge*," such as when "other charging parties . . . have brought claims against the same employer" (emphasis added)).
>
> Accordingly, should the District Court reach the disclosure issue on remand, it should both reconsider its reliance on *Associated Dry Goods* and, in determining whether limitations on disclosure are warranted, should utilize the framework for confidentiality orders that we articulated in *EEOC v. Kronos, Inc.*, 620 F.3d 287 (3d Cir. 2010).

*Long Branch*, 866 F.3d at 101 n.6.

In light of the Third Circuit's guidance, the Court finds that its previous reliance on *Associated Dry Goods* was misplaced. *Long Branch*, 866 F.3d at 101 n.6. The Court, therefore,

8

concludes that the EEOC has the right to disclose evidence obtained in the Charging Party's case with the Charging Party pursuant to the confines of *Associated Dry Goods*. *See Associated Dry Goods*, 449 U.S. 590 (1981) ("there is no reason why the charging party should know the content of any other employee's charge [if the other employees are themselves charging parties], and he [as the charging party] must be considered a member of the public *with respect to charges filed by other people*. With respect to all files other than his own, he is a stranger.") (emphasis added).

The Court recognizes the public policy considerations that justify the ability of the EEOC to share information from other employee files with the Charging Party. Specifically,

> limited disclosure to the parties can speed the Commission's required investigation: the Commission can more readily obtain information informally—rather than through its formal powers under 42 U.S.C. § 2000e-9—if it can present the parties with specific facts for them to corroborate or rebut. Second, limited disclosure enhances the Commission's ability to carry out its statutory responsibility to resolve charges through informal conciliation and negotiation: A party is far more likely to settle when he has enough information to be able to assess the strengths and weaknesses of his opponent's case as well as his own.

*Associated Dry Goods*, 449 U.S. at 600-01.

Next, the Court finds that the *EEOC v. Kronos* framework and the *Pansy* factors do not compel entry of Respondent's Confidentiality Order. In *EEOC v. Kronos*, the Third Circuit stated that "[t]he party seeking confidentiality establishes good cause by showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Kronos*, 620 F.3d at 302 (citations and internal quotations omitted). The Third Circuit then outlined the "good cause balancing test" factors from *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994):

> 1) whether disclosure will violate any privacy interests;
> 2) whether the information is being sought for a legitimate purpose or an improper purpose;
> 3) whether disclosure of the information will cause a party embarrassment;
> 4) whether confidentiality is being sought over information important to public health and safety;
> 5) whether the sharing of information among litigants will promote fairness and efficiency;
> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> 7) whether the case involves issues important to the public.

*Kronos*, 620 F.3d at 302.

The Court finds that Respondent has failed to demonstrate that the disclosure of comparator officers' files would work a clearly defined and serious injury and that Respondent has not shown potential injury with any specificity. *Pansy*, 23 F.3d at 786 (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). Respondent asserts that it is trying to protect the rights and privacy of the six non-party police officers and argues

> it is likely that they are not even aware that there is an investigation being undertaken by the EEOC with respect to Lt. Johnson's complaint. As such, these six officers are mere innocent by-standers whose rights must be protected and their records [should] be afforded an even higher level of confidentiality than the charging parties in *E.E.O.C. v. Associated Dry Goods*.

(Resp't's Opp'n Br. 19.) This complained-of injury from Respondent—especially the vague language with respect to the "rights and privacy of the six (6) non-party police officers"—is a clear example of "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" that "do not support a good cause showing." *Pansy*, 23 F.3d at 786 (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

Upon balancing the *Pansy* factors, the Court finds that Respondent has not demonstrated good cause for entry of a confidentiality order because:

(1) The disclosure does not violate any privacy interests because various statutory restrictions are in place that protect the confidentiality of information obtained during EEOC investigations (*e.g.*, the comparator officer files) and prevent such information from being disclosed to the public;

(2) The information (*e.g.*, comparator officer files) is being sought for the legitimate purpose of an EEOC investigation;

(3) The disclosure of information—which only occurs to the EEOC and the Charging Party but not to the public—will not appear to cause any party embarrassment;

(4) Confidentiality is being sought over information that relates to the public health and safety goals of EEOC investigations designed to eliminate discrimination;

(5) The sharing of information with the Charging Party will promote fairness and efficiency in the EEOC investigation;

(6) Although the party benefitting from the order of confidentiality is a police department and public entity, the party seeking the information is a public entity as well, so this factor is neutral; and

(7) The case involves issues that are important to the public because it concerns the results of an EEOC investigation.

The Court also agrees with the arguments made and cases cited by the EEOC in its opening brief, where it stated that the good cause "standard is simply not met in this case" and that:

> [n]o unusual circumstances are presented in this routine EEOC request for information. To the contrary, the only "special" status Respondent identified for the comparators was that they were "mere innocent bystanders." . . . That the request at issue here involves disciplinary files of Charging Party's comparators, who are not a party to the charge, is unremarkable. EEOC's request for "confidential" files of non-parties are routinely permitted over employer objections based on confidentiality.

11

(Pet'r's Moving Br. 13, ECF No. 25.) The EEOC also raises compelling policy rationales for not entering Respondent's confidentiality order here because:

> [m]andating that the EEOC withhold routine evidence from the Charging Party in this case would undoubtedly inspire other employers to resist EEOC requests for information at every stage of an EEOC investigation, in hopes of obtaining an order from a court to establish different confidentiality requirements than those provided by Congress. The agency would be put in the position of routinely seeking judicial intervention to obtain information needed to carry out its investigative responsibilities. Moreover, as aptly demonstrated by the long procedural history in this case, such a result would impede the agency's ability to investigate charges timely, since subpoena enforcement proceedings in court often delay a finding on the merits of a charge by months or even years, and can waste administrative and judicial resources. *cf. McLane Co.*, 137 S. Ct. at 1165 (emphasizing the "straightforward" role of the district court in subpoena enforcement proceedings).

(Pet'r's Moving Br. 13-14.)

Finally, the Court notes that statutory restrictions address Respondent's privacy concerns. As Petitioner explained:

> Congress has already considered and adopted confidentiality requirements for EEOC administrative investigations. Dissemination of information obtained by the EEOC is subject to a plethora of statutory restrictions and limitations. The statutory scheme evidences a clear design to balance the agency's need to obtain evidence with the obligation to protect material deemed confidential. In striking that balance, Congress has entrusted the EEOC with discretion to determine whether confidential information should be shared with a charging party during an administrative investigation.

(Pet'r's Moving Br. 7-8.); *see also EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981) ("[C]onfidentiality is no excuse for noncompliance since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination."); *EEOC v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146,

158 (S.D.N.Y. 2000) ("[T]here is no justification on this record for the entry of a protective order with reference to the subpoenas before this Court, and no reason to order the EEOC to depart from its normal practices, held in *Associated Dry Goods* to be entirely legal and consistent with the aims of the statute in ordinary cases."); *EEOC v. Kronos Inc.*, 620 F.3d 287, 298 (3d Cir. 2010) ("The EEOC is entitled to information that may provide a useful context for evaluating employment practices under investigation, in particular when such information constitutes comparison data."); *Morgan Stanley*, 132 F. Supp. 2d at 156 ("Congress has specifically foreseen and approved of the EEOC's practice of sharing information with charging parties because that practice is consistent with and promotes the statutory purpose. . . . [B]ecause disclosure to the charging party would ordinarily further the enforcement of [Title VII], disclosure should be the norm and a [confidentiality] order will be appropriate only in unusual circumstances.").

Here, Respondent did not satisfy the standards set forth in *Kronos* and *Pansy* and, accordingly, did not demonstrate its entitlement to a confidentiality order.

### III. Conclusion

For the reasons set forth above, the Court grants Petitioner's Motion and finds that the subpoena should be enforced in full. The Court will enter an order consistent with this Memorandum Opinion.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: June 22, 2018